[Civ. No. 26380. First Dist., Div. Three. May 5. 1970.]

DANIEL BOOKSTEIN, Plaintiff and Appellant, v.
RHODA S. BOOKSTEIN, Defendant;
ROBERT S. CURL et al., Interveners and Respondents.

## COUNSEL

Robertson, Alexander & Luther and Myron D. Alexander for Plaintiff and Appellant.

No appearance for Defendant.

Arthur L. Damon, Jr., for Interveners and Respondents.

## OPINION

**CALDECOTT, J.**—The appellant (father) appeals from orders of the superior court granting certain specified visitation privileges to the respondents (grandparents) of the minor child.

Custody of the minor child, Benjamin, had been awarded jointly to the parents and the actual physical custody to the maternal grandparents, Mr. and Mrs. Curl, at the time of the divorce in February 1964. The mother of the child had suffered from a mental illness for some time and was unable to care for the child. Benjamin had been residing with the grandparents since September 1961, and continued to do so until November 1966.

In August 1966 appellant filed a petition for change of custody of the minor child. A stipulation was entered into between the appellant (father) and defendant (mother) and the respondents (grandparents), through their attorneys, whereby it was agreed that the actual physical custody would be in the appellant, with rights of reasonable visitation to the grandparents.

In October 1966 an order modifying the judgment pursuant to this stipulation was entered. On June 3, 1968 on motion of the grandparents, the trial court entered an order granting the grandparents the right "to a visitation of Benjamin at the home of petitioners in Ohio during the month of July 1968. . . ." The order also provided in part as follows: "It is further ordered that in addition to the foregoing, at least once during each winter or spring vacation, upon prearrangement, the petitioners may visit said minor in California and have him with them for a period not exceeding three days."

On July 17, 1968 an order was entered changing the time of the Ohio visit from the month of July to the period, August 1 to August 30, 1968. The appellant has appealed from the June 3, 1968 and the July 17, 1968 orders.

The briefs of the appellant and respondents are devoted to the propriety of the orders as they relate to the visitation in Ohio during the months of

July and August 1968. Whether or not the child made the trip to Ohio in 1968 is not clear but obviously there is nothing this court can do about the visit now and that issue is moot. The order of June 3, 1968, however, does contain the provision relative to the grandparents visiting in California and having the child with them for a period not exceeding three days. This part of the order is still effective and the contentions of appellant, as they relate to it, will be considered.

The appellant contends that the court was without jurisdiction to enter the order of June 3, 1968. With the issue of the out-of-state visitation rights now being moot, this case is very similar to *Benner* v. *Benner,* 113 Cal.App.2d 531 [248 P.2d 425]. In *Benner* the minor child, following the divorce, was awarded to the mother (defendant) who resided with the grandmother (respondent). The mother disappeared and the custody was then awarded to the father (plaintiff). Pursuant to a stipulation the court ordered that the grandmother (in whose home the child had lived for three years) might have reasonable opportunities to visit with the child in her own home one weekend per month from Saturday noon until 6 p.m. Sunday, and one Saturday in each month from 10 a.m. to 5 p.m. The father moved to vacate this order on the ground that the court lacked jurisdiction to make it. From the order denying the motion he appealed. The court stated in *Benner*: "The simple answer to this attack is that the visitation privileges were granted pursuant to stipulation and for the best interest and welfare of the child. It was at this hearing that the court determined plaintiff was a fit and proper person to have the custody of the child, he having been awarded only the temporary, physical custody some two months previously. It is thus clear that the court had jurisdiction of the child and plaintiff and the responsibility of determining what was for the best interest of the child, taking into consideration the absence of her mother, her age of about 4½ years, that she had lived with her grandmother approximately three years, the father's remarriage and home situation and the other facts and circumstances that appear to have a bearing on the problem and its proper solution. . . . Hence the propriety of the order which permitted the child to go back to her former home once a month and spend a day and night there and to have the opportunity of spending an additional day each month in her new home with her grandmother. (During the course of the hearing plaintiff took the position that this order amounted to an award of custody of the child to the grandmother. Such a contention is contrary to the plain language of the order and its obvious intent.)" (*Id.* at pp. 532-533.)

In the present case Benjamin lived with the grandparents for over five years. The right to reasonable visitation was granted to the grandparents by stipulation at the same hearing at which appellant was granted

custody. The court, in effect, found in making the order that it was for the best interest and welfare of the child. In light of *Benner* the court clearly had jurisdiction of the appellant and the child (the grandparents had submitted to the jurisdiction of the court) and the provisions of the order granting rights of visitation within California to the grandparents was proper.

The appellant's contention that the stipulation in the present case "was between Appellant, the husband, and Defendant, the wife" is without merit. This contention ignores the fact that Mr. and Mrs. Curl are specifically mentioned in the stipulation, the stipulation is signed by two attorneys on behalf of the grandparents and is also signed by Robert S. Curl. The fact that the court's order of October 26, 1966 states "Pursuant to stipulation of the parties . . ." does not exclude the Curls.

Stipulations are to be given a reasonable interpretation, just as in other contractual matters. (*Estate of Howe,* 88 Cal.App.2d 454, 458 [199 P.2d 59].) Stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice. (Cf. *Theatrical Enterprises, Inc.* v. *Ferron,* 119 Cal.App. 671, 676 [7 P.2d 351].) It is not the province of the court to add to the provisions of a stipulation, to insert a term not found therein, or to make a new stipulation for the parties. (*Harris* v. *Spinali Auto Sales, Inc.,* 202 Cal.App.2d 215, 219 [20 Cal.Rptr. 586], and cases cited therein.)

The clear language of the stipulation refutes appellant's contention that the stipulation was only between Daniel and Rhoda Bookstein. It is also obvious that when the court issued the order modifying the judgment, pursuant to the stipulation of the parties, the term "of the parties" referred to the parties to the stipulation, including respondents Mr. and Mrs. Curl, and not merely the parties to the divorce action, i.e., Daniel and Rhoda Bookstein.

Appellant further contends that there is no substantial evidence to support the orders. Appellant contends that the evidence strongly shows that the home environment of respondents was unhealthy for a child. Respondents contend that the factual issue before the court was whether visitation in their home was for the best interest and welfare of the child and that there is evidence to support the trial court's determination that "the mental health of the child will be better, knowing that he is part of a family even if he has infrequent contacts with them" and that no emotional harm resulted from the child's last visit with respondents.

The court is guided by what it thinks will be in the best interest of the child. (See, e.g., *Brasher* v. *Brasher,* 253 Cal.App.2d 867, 869 [61 Cal. Rptr. 136]; *Friedland* v. *Friedland,* 174 Cal.App.2d 874, 879 [345 P.2d

322]; *Benner* v. *Benner, supra,* 113 Cal.App.2d 531, 532-533.) ■ "Trial courts have 'very extensive discretion' in matters of this kind and the conclusion arrived at by such courts in such cases will not be set aside unless the record discloses a clear abuse of discretion." (*Guardianship of Coughlin,* 129 Cal.App.2d 290, 293 [276 P.2d 841].) Although the evidence in the instant case is conflicting, there is sufficient evidence to support the lower court's findings and conclusions that, despite the history of mental illness in the maternal side of the family, the child would benefit from the visits to his grandparents. ■ It is the province of the trial court to judge the effect and value of the evidence, determine the credibility of witnesses and resolve the conflicts in the evidence or in the reasonable inferences to be drawn from the evidence. When the evidence is conflicting, the "appellate court will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact and will not disturb that finding when there is substantial evidence in the record in support thereof (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].)" (*McCarthy* v. *Tally,* 46 Cal.2d 577, 581 [297 P.2d 981]; see also *Green* v. *Green,* 215 Cal.App.2d 31 [30 Cal.Rptr. 30].)

This court was pleased to note, in appellant's brief, that Mrs. Bookstein, appellant's wife, stated on direct examination "I have no objection to them visiting at our house or near our house with Benji. We'd like to establish a grandparent and family relationship with them."

The other contentions of the appellant relate to the order of July 17, 1968 or the visitation to Ohio, so need not be discussed.

The appeal from the orders of June 3, 1968 and July 17, 1968, so far as they relate to the visitation of the minor child to the State of Ohio in 1968, is dismissed. The remainder of the orders is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.