238 So.2d 733

Ex parte Nell English, as Supervisor, etc.,
the State Department of Pensions and Se-
curity of the State of Alabama.

In re Nell ENGLISH, as Supervisor, etc., the
State Department of Pensions and Securi-
ty of the State of Alabama,

v.

Honorable Joe MACON, as Judge of the Cir-
cuit Court of Elmore County, Alabama,
and as Judge of the Nineteenth Judicial
Circuit of Alabama.

5 Div. 13.

Court of Civil Appeals of Alabama.

Aug. 5, 1970.

MacDonald Gallion, Atty. Gen., and Mary Lee Stapp and Clyde P. McLendon, Asst. Attys. Gen., for petitioner.

Howard & Dunn, Wetumpka, for respondent.

THAGARD, Presiding Judge.

For our own convenience as well as that of the parties we first set out in chronological order the following list of the pertinent proceedings, orders, and decrees—we omit some amendments and answers that are of no consequence to our findings—that led up to the cause now before us:

(1) On November 12, 1959, the Honorable Leland Enzor, as Probate Judge of Covington County, Alabama, acting as ex officio Judge of the Juvenile Court of said county, rendered a judgment that four minor brothers and sisters named Strickland were dependent and neglected and in need of the care and protection of the State; removing them from the custody of their parents; and awarding their permanent custody to the State Department of Pensions and Security (for convenience, hereinafter referred to as the Department). Only one of the minor children, Sally Ann Strickland (hereinafter called Sally Ann), is involved in the cause before us.

(2) On July 11, 1969, the Department, acting by Nell English, as Supervisor of the Division of Foster Home Care and Adoption, filed its verified petition in the Circuit Court of Elmore County, Alabama, alleging that the same Sally Ann whose custody had previously been awarded to the Department by the Juvenile Court of Covington County, and two other minor children not involved in this cause, were in the actual physical custody, possession, and control of one James Simon Flournoy (hereinafter referred to as Flournoy), a resident of Elmore County, and that the said Flournoy had refused to surrender the physical custody of said children to said Department upon legal request, and the petitioner prayed the court for an order directing the Sheriff of Elmore County to take said minor children and deliver them to the Department. On the same day the Honorable Joe Macon took cognizance of the petition and found the allegations thereof to be true and ordered that the Sheriff of Elmore County take said minor children from said Flournoy or any other person having physical custody of said children and forthwith to deliver to the Department. In said order the Judge further provided: "Any further matters with reference to the custody of Sally Ann Strickland are hereby certified and referred to the Covington County Intermediate Court of Covington County, Alabama."

(3) On October 2, 1969, Flournoy, making his first appearance in the cause, filed in the Circuit Court of Elmore County, in Equity, his petition alleging that in 1963 Sally Ann, now 15 years of age, was placed in his home, since which time he continuously had the custody and control of the child until she was taken from him by the Department by a legal proceeding instituted by the Department without giving him any

notice of any complaints against him or giving him an opportunity to be heard; that he does not now know where the child is and the said Department has refused to allow him to see the child or tell him where she is; and because of "his great fatherly love and affection for the child he greatly desires to be able to visit the said child and to ascertain her well being"; and he prays for an order giving him reasonable visitation rights.

(4) On October 6, 1969, Judge Macon made an order setting Flournoy's petition down for hearing on November 5, 1969.

(5) On October 31, 1969, the Department filed a plea in abatement to Flournoy's petition, assigning as grounds, among others, that the court in its order entered July 11, 1969, expressly refused or failed or declined to accept jurisdiction .of any further matters with reference to Sally Ann and the other two minors and that the decree specifically stated: "Any further matters with reference to the custody of Sally Ann Strickland are hereby certified and referred to the Covington County Intermediate Court of Covington County, Alabama"; and finally, that Sally Ann and the other two minors no longer reside in Elmore County, Alabama, wherefore, the Circuit Court of Elmore County, Alabama, does not have jurisdiction of said child.

(6) On October 31, 1969, Flournoy filed his motion that the Department be directed to produce Sally Ann in court on November 5, 1969, "to be available as a witness for the petitioner.", and Judge Macon granted the order on the same day.

(7) On January 5, 1970, Flournoy filed a motion to test the sufficiency of the Department's plea in abatement.

(8) On January 6, 1970, Judge Macon made an order sustaining Flournoy's objections to the Department's plea in abatement, finding that the plea in abatement was insufficient, and setting the cause down for the settling of further pleadings on January 26, 1970, and for: a trial on the merits on January 29, 1970. . .

(9) On January 23, 1970, the Department filed in this court its original petition for a rule nisi directed to Judge Macon to show cause why a writ of mandamus or prohibition, or other appropriate writ should not be issued to prohibit him from holding the scheduled hearings in said cause and from entertaining any further jurisdiction in the matter of the custody of Sally Ann.

(10) On January 23, 1970, we ordered a stay of further proceedings by Judge Macon until this court has rendered judgment on the application of the Department for an extraordinary writ.

(11) On January 28, 1970, we granted the rule nisi.

(12) On February 27, 1970, Judge Macon filed his answer or return to the rule nisi. By his answer Judge Macon asserts that he has jurisdction to hear Flournoy's petition, he denies that he had the right to remand the custodial question to the Covington County Intermediate Court, as he attempted to do by his order dated July 11, 1969, and he denies that the Intermediate Court of Covington County has any further jurisdiction in the matter of the custody of Sally Ann.

(13) On April 27, 1970, the cause was submitted on briefs and the pleadings of the parties.

The threshold question is whether or not the Circuit Court, in Equity, of Elmore County has jurisdiction to entertain and try the issues raised by Flournoy's petition. If the answer is "No", the Department has sought the proper remedy and this court should grant the writ of prohibition. Statham v. Statham, 276 Ala. 675, 166 So.2d 403.

In the *Statham* case, supra, the Circuit Court of Blount County, in Equity, had rendered a decree on December 16, 1963, awarding the minor children of the parties to the husband. After the decree was entered the wife refused to deliver the children to her husband. Prior thereto, on August 15, 1963, the mother had moved

with the children to Jefferson County, Alabama. She submitted to the jurisdiction of the Circuit Court of Blount County by filing a demurrer and a cross-bill. After the rendition of the decree in the Circuit Court of Blount County, the mother filed a bill in the Circuit Court of Jefferson County, Alabama, seeking a divorce and the custody of the children. The father filed a plea in abatement to the jurisdiction of the Jefferson County Court, which was overruled. In the meantime, the wife had appealed from the decree of the Blount County Circuit Court; and after his plea in abatement was denied by the Circuit Court of Jefferson County the father filed a petition for a writ of prohibition against that court. The Supreme Court considered the appeal from the decree of the Circuit Court of Blount County and the original petition of the father for a writ of prohibition against the Jefferson County Circuit Court together. The court, in a well reasoned opinion by Justice Simpson, affirmed the decree of the Blount County Circuit Court; held that when two courts have concurrent jurisdiction, that court which first takes cognizance of the cause has the exclusive right to entertain it; held that the plea in abatement to the mother's bill of complaint in the Jefferson County Court should have been sustained, and ordered the issuance of the writ of prohibition.

In Ball v. Jones, 272 Ala. 305, 315, 132 So.2d 120, 128, the Supreme Court said:

> "Nor are we in agreement with respondent's contention that a writ of prohibition to prevent the lower court from acting in a matter over which it has no jurisdiction is improper. To the contrary, we are not apprised of any other proceeding which would be adequate. A writ of prohibition is a preventive rather than a corrective remedy, to prevent usurpation or excessive jurisdiction by a judicial tribunal and to keep each court within the limits to which law confines it. * * *".

Now, we come to grips with the jurisdictional question.

The Department contends that the Circuit Court, in Equity, of Elmore County, Alabama, divested itself of jurisdiction by referring all further matters pertaining to the custody of Sally Ann to the Intermediate Court of Covington County, Alabama, to which the respondent in this cause properly and correctly answers that, in the absence of a statute, said Circuit Court was without authority to make such transfer. Unless Tit. 13, § 365, 1940 Code of Alabama, provides such authority, we know of no such statute, and we think and hold that said section authorizes only juvenile courts, themselves creatures of the statutes, to transfer matters of custody of minors to juvenile courts in other counties; hence, we hold that the effort of the Elmore Circuit Court to transfer said cause was of no effect.

On the other hand, we think the effort of the Elmore Circuit Court to make such transfer indicates that at that time the Elmore Circuit Court was cognizant of the fact that the paramount and exclusive jurisdiction of the custody of Sally Ann was in the Intermediate Court of Covington County, as successor and transferee of all juvenile matters theretofore in the jurisdiction of the Juvenile Court of Covington County.

In Ex parte State ex rel. McLaughlin, 250 Ala. 579, 581, 582, 35 So.2d 507, 508, our Supreme Court said:

> "We have long recognized this rule as to the different counties of the state of Alabama, to the effect that when a decree is rendered awarding the custody of a child in the equity court of Alabama jurisdiction remains with that court, and the fact that the child may have later established a residence in some other county of the state does not deprive the court in the county which rendered the decree from modifying it on account of occurrance of subsequent events. The subsequent change of domicile of the child does not serve to defeat the jurisdiction of the court in the county where the decree was rendered. Such was the rule in Lassiter v. Wilson, 207 Ala. 669,

93 So. 598, and other authorities cited in the Little [Little v. Little, 249 Ala. 144, 30 So.2d 386] case, supra."

Also, in Department of Pensions and Security v. Oswalt, 275 Ala. 63, 68, 152 So.2d 128, 133, the Supreme Court said, inter alia:

"But, until the court first assuming jurisdiction enters something in the nature of a final decree, no other court of concurrent jurisdiction may assume jurisdiction * * *"

See also Little v. Little, 249 Ala. 144, 30 So.2d 386.

True, the quote, supra, refers only to the jurisdiction of equity courts. But we note that a portion of Tit. 13, § 351, 1940 Code of Alabama, reads as follows:

"The court [meaning juvenile courts created by statute], as to such dependent, neglected, and delinquent children, shall have and exercise the jurisdiction and power possessed by equity courts in this state; but shall not have power to adjudicate any matter or make any order affecting any property rights of such children * * *"

■■ The foregoing provision confers upon juvenile courts concurrent jurisdiction with equity courts of dependent and neglected children, such as was Sally Ann when the order awarding her custody to the Department of Pensions and Security was made, and, except as to property rights, the same jurisdiction and powers; so we conclude that the rules pertaining to the continuing jurisdiction of equity courts in custody cases, as expounded in Ex parte State v. McLaughlin, supra, are applicable to juvenile courts in cases involving the custody of dependent, neglected, or delinquent children. That being true, only the Intermediate Court of Covington County had the jurisdictional power and authority to modify the decree of the Juvenile Court of Covington County, and the Circuit Court of Elmore County, in Equity, was and is without jurisdiction to in any way modify that decree. If the Circuit Court of El- more County took jurisdiction for anything more than the limited relief sought by the petition filed on July 11, 1969, it did so without authority.

■■ As we interpret the Department's petition to the Elmore Circuit Court, it asserted that it already had the legal custody of Sally Ann by virtue of the award of the Juvenile Court of Covington County, but that at the time of the filing of its petition the child was "in the actual physical custody and possession and control of one James Simon Flournoy * * *", who had refused the legal request of the Department that he surrender "physical custody and possession of said children" to the Department; and further that "For the protection and safety of said minor children, it is necessary that this Honorable Court direct the Sheriff of Elmore County or any Sheriff of the State of Alabama immediately and forthwith to take said minor children and *deliver* custody and control of them to your Petitioner * * *" (Emphasis supplied.) The prayer of the petition did not seek to have Flournoy made a party to the proceeding or even that he be served notice. The order made by the court responded to the prayer of the petition by ordering the Sheriff of Elmore County or any Sheriff of the State "immediately and forthwith to take the minor children [naming them and including Sally Ann] from the *physical custody* of James Simon Flournoy or any other person having *physical custody* of said minor children" (Emphasis supplied) * * * and "The Sheriff * * * is further hereby ordered and directed immediately and forthwith to deliver said minor children to Petitioner, Nell English, in her capacity, * * *", etc. The order does not make Flournoy a party to the proceeding or provide that notice be given him. If we had to characterize the proceeding we would say that it was an emergency proceeding in the nature of habeas corpus, in which the court exercised its inherent jurisdiction for the protection of minors within its territorial jurisdiction. For failure to make Flournoy a party and setting

the same down for hearing with proper notice to all, the proceeding may have been void, but it served its beneficent purpose and is now in the realm of *fait accompli.* However that may be, we hold that the Elmore County Circuit Court had the right to assume jurisdiction only because the child was in its jurisdiction and an emergency had arisen in that Flournoy was wrongfully withholding the child from its legal custodian. The Elmore Circuit Court made a final order granting the relief prayed for, from which no application for rehearing was filed and no appeal taken or other remedial appellate remedy applied for. We hold that the Elmore Circuit Court lost whatever jurisdiction it may have had at the expiration of thirty days from July 11, 1969.

█ One of the grounds of the Department's amended plea in abatement to Flournoy's petition was that "None of the persons affected in this matter are residents of Elmore County, Alabama, with the possible exception of James Simon Flournoy * * *" We are of the opinion that this was sufficient as a plea to the jurisdiction and that the trial court erred in holding that the plea was insufficient.

There is yet another impelling reason why the Elmore Circuit Court should not entertain jurisdiction of Flournoy's petition. Although the question was not raised by the Department in its plea in abatement, and the proceeding has never reached the demurrer stage, we think the nature of this case justifies us in taking a hard look at the allegations of Flournoy's petition and determining whether or not it states such a cause of action, or contains such equity, as to give the court jurisdiction of the subject matter. Briefly, he alleges that he is 58 years of age and a resident of Elmore County; that Sally Ann, now 15 years of age, was put in his home by the Department in 1963, since which time he "continuously had the care, custody and control of said child and has treated her as though she were his own child and of his own blood" (thereby impliedly admitting that she was not of his own blood), "until she was taken from him by said Department about June 1, 1969." Then he alleges the death of his wife on May 10, 1969, after which the Department brought a proceeding in the Elmore Circuit Court "to take the said child from him without giving him any notice of any complaints against him or giving him an opportunity to be heard"; that he does not now know where the child is and the Department "has refused to allow him to see the child or to tell him where she is and because of his great fatherly love and affection for the child he greatly desires to be able to visit the said child and *to ascertain her well being.* (Emphasis supplied.) That is the substance of his averments. He prays that "your honor will make an order to the end that Petitioner be allowed to have reasonable visitation privileges with the said child and be allowed to know her whereabouts and *ascertain her well being* from time to time * * *." (Emphasis supplied.)

█ The petition does not allege kinship with the child or that the Department placed the child in his home for adoption or that he has ever instituted adoption proceedings. We find no averment in the petition that would support any sort of custodial right or claim on the part of Flournoy, and without such allegation the petition is without equity and the court without jurisdiction of the subject matter. It is Hornbook law that equity courts and juvenile courts have jurisdiction of children for the benefit and protection of the children and not for the benefit of them who litigate about custodial rights. One who seeks a custodial right—and visitation is a custodial right—must allege that the child will in some way suffer if the right is not granted or that the child will be benefitted if the right is granted. The nearest to such an averment are the words which we have hereinabove emphasized in which Flournoy expresses a desire "to ascertain her well being." But the Legislature has placed that responsibility, as to

children in Sally Ann's category, upon the juvenile courts and the Department of Pensions and Security and not upon persons with whom the Department may have entrusted such children for a time.

 When the Juvenile Court of Covington County conferred custody of Sally Ann upon the Department it became *in loco parentis* to the child and acquired all of the rights and had thrust upon it all of the responsibilities of natural parents. If the natural parents of a child should send it to boarding school for several years, then withdraw it, would the headmaster have acquired visitation rights against the wishes of the natural parents because he had become fond of the child and wanted to "ascertain its welfare from time to time?" We think the answer of any court would be a resounding "No" and that most courts would dismiss the petition ex mero motu. We realize that we are deciding an issue that has not been raised by the Department, but our Supreme Court in City of Huntsville v. Miller, 271 Ala. 687, 689, 127 So.2d 606, 608, said:

> "We must consider, ex mero motu, questions of jurisdiction; and where a judgment appealed from is void for want of jurisdiction we have no alternative but to dismiss the appeal. (Citations omitted) From the early case of Wyatt v. Judge, supra, [7 Port. 37, 38–40], is the following:
>
>> " '* * * [W]e think the record shows that the Circuit court had no jurisdiction of the case. * * * It may perhaps be thought, that inasmuch as this objection was not expressly made in the Circuit court, it should not be regarded here. We understand the law to be otherwise. It was the duty of the Circuit court mero motu to have repudiated the appeal * * * and it is certainly our duty to do what that court should have done * * *.' "

We hold that the trial court should have dismissed Flournoy's petition ex mero motu.

Unless upon receipt of the opinion by the respondent judge, a judgment is entered sustaining the Department's plea in abatement to Flournoy's petition and dismissing said petition, a peremptory writ of prohibition, directing that said action be taken will issue on request of the petitioning Department.

Writ of prohibition awarded conditionally.