ROBERT EDWARD FRANKS *v*. MARY MARGARET FRANKS.

[No. 3-1173A157. Filed March 6, 1975.]

*Alan R. Smulevitz*, of Gary, for appellant.

*Fred A. Malo*, of Hammond, for appellee.

HOFFMAN, J.—This appeal arises from an award of custody of minor child by the trial court in a divorce action. Plaintiff-appellant Robert E. Franks (Robert) filed a divorce action against defendant-appellee Mary Margaret Franks (Mary), who cross-claimed for a divorce. Both sought custody of the child of the marriage. After granting a divorce to Mary, the trial court awarded custody of the child to her parents. Appel-

lant then filed a motion to correct errors which was overruled, and he perfected this appeal.

Appellant first asserts that the trial court erred in failing to make a finding that he was unfit to have custody of the child before awarding custody to third parties. It is true that the law recognizes certain parental rights to custody, and that such parental rights continue to subsist after an adverse custody ruling. *Sanders* v. *Sanders* (1974), 160 Ind. App. 174, 310 N.E.2d 905. However, such rights are subordinate to the best interests of the child.

IC 1971, 31-1-12-15 (Burns Code Ed.), which was in effect at the time the judgment of the trial court in this cause was entered,[1] provided:

> "Guardianship, custody, support and education of children. The court in decreeing a divorce shall make provision for the guardianship, custody, support, and education of the minor children of such marriage; and the court may require the father to provide all or some specified part of the cost of education of such child or children beyond the twelfth year of education provided by the public schools, taking into consideration the earnings of the father, the station in life of the parents and child or children involved, the aptitude of the child or children as evidenced by school records, the separate property of the child or children, and all other relevant factors; Provided, That the jurisdiction over the child or children shall remain in the court at all times during the child's or children's minority and shall not be lost because of the death of either parent."

IC 1971, 31-1-12-15, *supra*, did not require an explicit finding by the trial court that a parent is unfit before he may be denied custody, and appellant has cited no cases to this court requiring such a finding. Furthermore, appellee's cross-complaint alleged that Robert "is not a fit and proper person to have the care and custody" of their child. In finding for Mary on such cross-complaint, the trial court impliedly made a finding of appellant's unfitness to have

---

1. IC 1971, 31-1-12-15 (Burns Code Ed.), was repealed by Acts 1973, P.L. 297, § 3. The present statutes directly pertaining to this subject are found in Title 31, Art. 1, ch. 11.5.

custody. The failure of the trial court to explicitly make such a finding cannot warrant reversal.

The next issue which must be considered herein is whether there was sufficient evidence to sustain the judgment of the trial court on the custody issue. The facts and reasonable inferences therefrom in the record of this cause which are most favorable to the appellee herein establish that although Mary is of an adult age, she has the mental capacity of a normal individual of the age of 10 years. Robert was aware of Mary's condition prior to their marriage. After they were married a child was born to them, and thereafter Robert became somewhat indifferent toward Mary. Later, they ceased to occupy the same bedroom. Mary attempted to discuss these problems with Robert but this caused him to become angry and evasive.

Although Robert frequently visited his relatives and took the child along, Mary was often left at home. Mary's clothing deteriorated into a "pathetic" condition, and Robert rarely took her out socially. Robert often told Mary that she was "stupid", and on one occasion struck her across the face.

During the marriage, Robert also became involved with other women. He admitted having sexual relations with one woman, and there is evidence that he wrote love letters to another. Additionally, he permitted a third woman to live in their home for a period of approximately seven months. On one occasion, Mary discovered Robert in bed with this woman during the night.

The record also reflects that Mary properly fed, bathed and clothed the child. The child would become dirty while playing outdoors during the day, and Mary bathed her each evening. Robert occasionally took the child to his relatives' homes to be bathed when she was soiled from playing.

Mary stated that she has been unable to earn other than small amounts of money throughout her life, but loves her child and can care for the child with help from her parents.

Mary's parents expressed a willingness to care for Mary and her child.

Mary's cross-complaint asked that custody be awarded either to her or to her parents. After hearing the evidence in this cause, the trial court awarded custody to Mary's parents.

In the case of *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 179 N.E. 773, a father sought reversal of a trial court judgment in an action to modify custody awarding custody of his minor son to his sister-in-law and his brother. Our Supreme Court affirmed the judgment of the trial court depriving the father of custody, and, at 287-88 of 203 Ind., at 777 of 179 N.E., stated:

> "The trial court had before it the question of this father's reformation and the paramount question of the welfare of the child. The determination of both questions rested upon the sound judicial discretion of the trial court rather than upon hard and fast rules of law. [Citations omitted.] Our review of the action of the trial court in this case is limited to judicial abuse of discretion, and, from the evidence which we have briefly set out above, we have determined that no case has been made out here to show an abuse of discretion by the lower court, and we hold that the finding and judgment are sustained by sufficient evidence."

The rationale for this ruling was reaffirmed by our Supreme Court in *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, at 372-73, 75 N.E.2d 417, at 419, as follows:

> "The disposition of children presents a delicate and perplexing task which has taxed the wisdom of judges since the day of Solomon. The trial court is better able to arrive at a sound and safe conclusion than can a court of review which has only the cold printed or typed record before it. It is true that the facts in this case are not in great dispute but even where evidentiary facts are admitted different inferences and conclusions may be drawn therefrom, and conclusions and judgments may hang upon intangibles and impressions not cognizable to a court of review. The trial court in this case saw the mother and the stepmother and was in better position to weigh the evidence and the inferences therefrom and determine the best interest of the child, and having done so, it is not for us to substitute

our judgment for the judgment of the trial court's unless it appear from uncontradicted and undisputed evidence and the only inferences therefrom that the trial court violated its discretion and reached an untenable position. To reverse this case would require us to hold that the trial judge violated sound judicial discretion in reaching his conclusion. This we are unwilling to do." See also: *Cox* v. *Cox* (1973), 155 Ind. App. 336, 292 N.E.2d 817 (transfer denied); *Shaw* v. *Shaw* (1973), 159 Ind. App. 33, 304 N.E.2d 536; *Freeman* v. *Freeman* (1973), 159 Ind. App. 98, 304 N.E.2d 865 (transfer denied).

There is evidence in the record of this cause to serve as a basis for the custody determination made by the trial court. Under the cases cited hereinabove, the trial court decision may not be reversed by this court on the basis of conflicting evidence. An abuse of discretion by the trial court must be shown, and appellant has failed to show any such abuse.

Appellant's final contentions are that the trial court erred in not examining the child to determine if she was competent to testify, and in failing to determine the wishes of the child.

As to the competency issue, it is apparent that a trial court should not indulge in such an inquiry unless a child under the age of ten years is offered as a witness under oath at a judicial hearing. See: IC 1971, 34-1-14-5 (Burns Code Ed.). In the case at bar, the testimony of the child was offered to the trial court by appellant's counsel in the following manner:

"Your Honor, both counsel have discussed the matter and we would be willing to have the minor child, Mary Jean Franks, *interviewed by you, your Honor, without counsel or the litigants present* \*\*\*." (Emphasis supplied.)

The substance of the agreement of counsel reflected in this statement was that the court could interview the child outside the record of the proceedings. The child was not offered as a witness in the case and, thus, the trial court was under no duty to determine her competency as such.

As to the trial court's failure to interview the child to ascertain her wishes, counsel for the appellee herein correctly contends that there was no statute in effect at the time of the trial of this cause which would have required the trial court to obtain such information. However, counsel for the appellant has directed the court's attention to the case of *Duckworth* v. *Duckworth, supra,* and cases cited therein, as authority for the proposition that a trial court should consider the wishes of the child in such cases.

An examination of *Duckworth* and the cases therein relied upon for this point discloses that our Supreme Court's attitude toward such inquiries made by the trial courts in those cases was permissive rather than mandatory. Accordingly, the making of such an inquiry in the case at bar rested within the sound discretion of the trial court. A mere allegation of a failure by the trial court to so inquire cannot serve as a basis for reversal.

No reversible error having been shown, the judgment of the trial court must be affirmed.

Affirmed.

Staton, P.J. and Garrard, J., concur.