MARCELLA BRISTOW; CARMA HALL *v.* DEBRA SUE KONOPKA.

[No. 1-575A96. Filed October 29, 1975. Rehearing denied November 25, 1975. Transfer denied May 20, 1976.]

*John D. Clouse,* of Evansville, for appellants.

*Bates, Warrum & Noffsinger,* of Evansville, for appellee.

LOWDERMILK, J.—Plaintiffs-appellants Marcella Bristow (Bristow) and Carma Hall (Hall) appeal the trial court's overruling of their petition to set aside the appointment of a guardian.

## FACTS:

On December 28, 1971, Misty Dawn Konopka was born to Gale and Debra Sue Konopka. The evidence is clear that Debra's mother-in-law, Marjorie Konopka, often helped care for Misty and that Misty was left in Marjorie's exclusive care on numerous occasions.[1]

On August 15, 1974, Marjorie legally adopted Misty, and the rights and obligations of the biological parents with regard to the child were thereby relinquished.[2]

Marjorie subsequently died on December 13, 1974, and Misty was cared for by Bristow (Misty's great aunt) and other members of Misty's extended family.

On December 17, 1974, Debra filed a petition to be appointed guardian for Misty, and said petition was granted that day without notice. The following day, the trial court issued an order directing that Misty be released to Debra's custody.

After Debra's appointment, Bristow and Shirley Ashby (Marjorie's sister) filed separate motions to set aside the appointment of Debra as guardian; each motion also contained a request that the movant be named guardian. Both motions were denied.

## I.

Initially we must consider the standing of Hall as a party to this appeal. She at no time had legal custody of Misty.

---

1. On at least one occasion, Misty was with Marjorie for five months.
2. *See,* IC 1971, 31-3-1-9 (Burns Code Ed.).

Further, she did not file a motion to set aside the appointment of a guardian, either separately or in conjunction with Bristow. While she was called as a witness, and was named in orders of the trial court, her first appearance as a litigant is in name only as a party to the motion to correct errors.

In support of her standing, Hall cites the following section of the Probate Code, which is included by reference in IC 1971, 29-1-18-3 (Burns Code Ed.) as part of the guardianship statutes:

"Any person considering himself aggrieved by any decision of a court having probate jurisdiction in proceedings under this (Probate) Code may prosecute an appeal to the court having jurisdiction of such appeal. Such appeal shall be taken as appeals are taken in civil causes. Executors, administrators, guardians and fiduciaries may have a stay of proceedings without bond." IC 1971, 29-1-1-22 (Burns Code Ed.)ᵛ

We agree that the above section is applicable. *State ex rel. Lacy v. Marion Probate Court* (1962), 243 Ind. 30, 182 N.E. 2d 416. Further we note that one need *not* be a party, and need only "consider" himself aggrieved. While the question as to who may be an aggrieved party is a close one, given the nature of the proceedings in this case, we find Hall, under the above statute, has standing to join the present appeal.

## II.

Bristow and Hall raise two questions in their brief:

1) Whether the proceeding to appoint a guardian was improper since they, and other interested persons, received no notice;

2) Whether the guardianship proceeding was improperly used to decide the issue of custody.

In support of the first alleged error, Bristow and Hall contend that they stand *in loco parentis* to Misty, and that

the statute regulating notice in guardianship proceedings requires notice to those of such status.

Further, it is contended that the failure to provide notice violates federal and state constitutional guarantees.

Debra responds that the notice provisions do not require notice to Hall and Bristow. In addition, it is argued that even if the statute required notice to those standing *in loco parentis,* Hall and Bristow never alleged such status in the motion to correct errors, and cannot now assert it on appeal.

The statute specifying notice procedures reads, in part, as follows:

"Notice of hearing on petition for guardianship. When an application for the appointment of a guardian is filed with the court, notice of the hearing shall be served as follows:

(a) When the application is for the appointment of a temporary or a successor guardian, no notice shall be served unless ordered by the court;

(b) *When the application is for the appointment of a guardian for a minor,* notice shall be served upon the parents or surviving parent of such minor, if the whereabouts of such minor's parents or surviving parent are known, but no other notice shall be necessary unless ordered by the court;

(c) When the application is for the appointment of a guardian for an incompetent person as defined in subsection (c)(2) of IC 1971, 29-1-18-1 notice of hearing shall be served upon the following unless they have signed the petition or have waived notice of the hearing;

(1) the incompetent, if over fourteen (14) years of age;

(2) the person having the care and custody of the incompetent, if any;

(3) any other person directed by the court." (Our emphasis.) IC 1971, 29-1-18-14 (Burns Code Ed., Supp. 1974.)

We note that while a minor may be an incompetent (*see,* IC 1971, 29-1-18-1(c)(1)), subsection (c) above relates only to those insane, mentally ill or otherwise infirm.

There can be little dispute that subsection (b) clearly does *not* require notice to Bristow and Hall, as they are not the parents of Misty. The only question is whether notice should have been given to those who were temporarily caring for Misty. The court is clearly given the power, in subsection (b), *supra,* to require notice not specifically mandated by other language. In this regard, we must consider the contention that those *in loco parentis* should receive notice.

We find that the authority cited in support of the above contention is not persuasive. The case of *Sturrup* v. *Mahan* (1974), 261 Ind. 463, 305 N.E.2d 877 defines *in loco parentis* as the assumption of legal obligation without formal adoption. The conclusion reached by the Supreme Court based on that definition was that a *legal guardian* stands *in loco parentis,* and is a *de facto* parent. While Hall and Bristow may have acted under moral obligation, they have assumed no legal obligations which would bring them within the definition cited in their authority. *See also, Treschman* v. *Treschman* (1901), 28 Ind. App. 206, 61 N.E. 961.

We must yet, however, address a problem raised by the peculiar facts of this case. The biological parents of Misty Dawn Konopka, by consenting to her adoption, relinquished all rights with respect to their child. IC 1971, 31-3-1-9 (Burns Code Ed.) As stated in *In Re Adoption of Bryant* v. *Kurtz* (1963), 134 Ind. App. 480, 189 N.E.2d 593,

> "Adversary proceedings for the adoption of a child must be carefully distinguished from those involving a question of its custody as the former involve more serious consequences and are of real import. Custody may be awarded for a temporary duration but a decree of adoption severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another. For all legal and practical purposes a child is the same as dead to its parents. The parent has lost the right to ever see said child again or to have any real knowledge of its whereabouts. . . ."

Thus the adoption of Misty by Marjorie placed the latter in the legal and moral status of a parent. However, when the petition for appointment of a guardian was filed there was no living parent who was then liable and responsible for the welfare of Misty; Marjorie being deceased, and Debra having no obligation to, or rights in the child. We find that the notice provision above does not specify whether "parent" means biological or adoptive parent.

See also, *Richards* v. *Caysinger* (1968), 249 Ind. 671, 234 N.E.2d 499.

Therefore, following Marjorie's death there was a legal parental hiatus, and during this time Misty was being cared for by those who had for several years materially assisted in her upbringing. It is arguable that, given the peculiar facts of this case and the statutory ambiguity, notice was required to be sent to no one at all. Assuming, *arguendo*, that notice was due no one *under the statute*, we nonetheless believe that notice should have been given to those who were *then* most directly involved in caring for Misty.

We reach this conclusion with a particular concern for the welfare of the child. IC 1971, 29-1-18-18 (Burns Code Ed.) states in part that,

"Before appointing a guardian the court must be satisfied:

\* \* \*

(c) That the person to be appointed guardian is qualified and is the person most suitable of the persons available at the time to act as such under this (Probate) Code."

Obviously, Debra was not the only person available, and there were no findings of why Debra was *"most* suitable." While the bond of mother and child is given due regard (*see,* IC 1971, 29-1-18-10(e)) we look most closely to the benefit of the child. We note further language from *In Re Bryant, supra,* that cases there cited all involved

". . . *guardianship,* divorce, or habeas corpus proceedings and *in such matters the courts are more inclined to look*

*at the material welfare of the child than to rights of the natural parents."* (Our emphasis.) 134 Ind. App. at 488.

We therefore conclude that, *under the facts of this case,* the procedure appointing Debra guardian was improperly convened. In light of this decision, we need not discuss further arguments of the parties.

This cause is reversed and remanded, with instructions that the appointment of Debra as guardian be dissolved, and that a hearing on said petition for appointment be conducted after due notice to Bristow, Hall, and Shirley Ashby, and all other necessary and proper parties.

Roberston, C.J. and Lybrook, J., concur.

NOTE.—Reported at 336 N.E.2d 397.