ALBERT C. COLLEY, MADELINE COLLEY *v.* KENNETH E. CARPENTER, DORTHA E. CARPENTER, JOHN H. MANSHIP, SURVEYOR, MADISON COUNTY, INDIANA.

[No. 2-775A168. Filed April 11, 1977.]

*John P. Price, Richard J. Darko, Bingham Summers Welsh & Spilman,* of Indianapolis, for appellants.

## STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Plaintiff-appellant Colley appeals from a judgment in favor of defendant-appellee Carpenter which awarded a disputed strip of land to Carpenter in Colley's appeal from the findings of a legal survey to the circuit court.

We reverse.

## FACTS

A brief outline of all transactions pertinent to the suit in question is as follows:

Tract #1 excluding the disputed strip of land equals: 1.997 acres.

Tract #2 excluding the disputed strip of land equals: 2.154 acres.

Disputed strip of land equals: .296 acres.

1945—Opal Lawson owned both Tract #1 and Tract #2.
1945—Lawson sold tract #1 to Chester Budd by land sale contract.

1947—Budd constructed the fence shown in the diagram above, thereby unknowingly cutting off a portion of the land described in the deed to Tract #1.

1948—Lawson executed the deed to Tract #1 to Budd.

1948—Lawson continued to live on Tract #2 for a few months, then she began to rent Tract #2 to other people, all of whom used the property up to the fence.

1948-1959—Tract #1 was owned and possessed by several people.

1957-1963—Colley rented Tract #2 from Lawson. Colley also used Tract #2 up to the fence.

1959—Carpenter bought Tract #1, still using the fence constructed by Budd as the boundary between Tract #1 and Tract #2.

1963—Lawson sold Tract #2 to Colley by land sale contract.

1969—Lawson executed the deed to Tract #2 to Colley.

1971—Carpenter requested a legal survey of Tract # 1. Such legal survey determined that the boundary line did not follow the fence constructed by Budd, but that the boundary described in the deed to Tract #1 was in reality forty feet east of the fence at the lower portion of the tract.

1972—Colley appealed from the legal survey to the circuit court and alleged that the disputed strip of land was his by adverse possession.

1974—A judgment which upheld the determinations made by the legal survey was rendered in favor of Carpenter.

During his period of possession and ownership Colley built two small frame buildings without foundations on the disputed strip, often used the land for pasture, and on occasion maintained a garden plot on the disputed strip of land. Colley paid property taxes on 2.07 acres and Carpenter paid property taxes on 1.99 acres. Inasmuch as the parties stipulated that they paid all taxes which they were assessed respectively, then it follows that no assessments were made on the disputed strip of land. Therefore, neither party paid any taxes on that disputed strip of land.

## ISSUE

Was the finding, decision, and judgment of the trial court in favor of Carpenter contrary to the evidence and contrary to the law in that the evidence was without conflict and could lead to but one conclusion, that conclusion being that Colley had established all of the elements necessary to show title by adverse possession, and yet the trial court reached the opposite conclusion?

## DISCUSSION AND DECISION

Carpenter has not filed an appellee's brief with this court for the purposes of this appeal. Therefore, Colley need only show that the trial court committed prima facie error to win reversal. Likewise, the statement of facts contained in Colley's brief is deemed by us to be accurate and sufficient for the disposition of this appeal. See *In Re Sheeks* (1976), 168 Ind. App. 591, 344 N.E.2d 872.

In order for Colley to prove a prima facie case of his adverse possession of the disputed strip of land which lies between Carpenter's tract of land and his, he must show that this possession was actual, visible, open and notorious, exclusive, under claim of ownership, hostile, and continuous for the statutory period. He must also show that he paid all the taxes which fell due upon such land during the period which he adversely possessed it. See *Penn Central Transportation Company* v. *Martin* (1976), 170 Ind. App. 519, 353 N.E.2d 474.

IC 1971, 34-1-2-2 (Burns Code Ed.) provides:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.

\*    \*    \*

. . . for the recovery of the possession of real estate, within ten [10] years: Provided, That *as to all such . . . causes of action for the recovery of the possession of real estate accrued prior to the effective date of this amendatory act*

*[March 7, 1951], the time in which actions shall be commenced thereon shall be the same as if this amendatory act had not become law."* (Citations omitted) (Our emphasis)

However, in the case at bar the statutory period which is required to determine a change of ownership by adverse possession is twenty years.

Lawson sold Tract #1 to Budd in 1945, Budd erected the fence in 1947, and Lawson executed the deed to Tract #1 to Budd in 1948. Therefore, at the latest Lawson, the predecessor in title to Colley, began to adversely possess the strip of land now in dispute in 1948. Budd's cause of action to recover possession of his land east of his fence accrued prior to March 7, 1951. Therefore, the former statutory limit of twenty years[1] would apply.

On their face the facts show that Colley personally did not comply with the required statutory period. He began buying Tract #2 on contract in 1963, and this action was commenced in 1972. Therefore, he did not comply with the current ten year statutory limit, let alone the former twenty year limit. However, Colley contends that Lawson's period of possession and ownership can be tacked to his, thereby constituting a combined twenty-four years of adverse possession. With this we agree.

In *Cooper* v. *Tarpley* (1942), 112 Ind. App. 1, 41 N.E.2d 640, 643, the court said:

"It is settled that the statutory period of possession need not be maintained by one person. Successive periods of tenancy by different tenants may be tacked to constitute the necessary period for adverse possession to defeat the title of the record owner, if each of the successive tenants claimed to hold and were in possession under his predecessor." (Citations omitted)

The question arises, however, as to whether a grantor can hold adversely to his grantee, that is: could Lawson have

---

1. Acts 1881 (Spec. Sess.), ch. 38, § 38, p. 240.

possessed adversely the strip of land east of the fence which she had deeded to Budd? The answer to this question was given in *Fort Wayne Smelting and Refining Works* v. *City of Fort Wayne* (1938), 214 Ind. 454, 14 N.E.2d 556, wherein our Supreme Court held that a grantor may originate adverse possession against his grantee by entering upon the property without the permission of the grantee and by acting as if he were the sole owner by making leases, receiving rents, paying taxes, improving the property, cultivating it, and using it in ways consistent with his claimed ownership.

In the case at bar there is evidence to show that shortly after Lawson gave Budd the deed to Tract #1 in 1948 she leased Tract #2 to another, and collected the rents therefrom. All of Lawson's lessees occupied and used the land up to the fence either for pasture or for a garden. It is evident from the facts that such use was open and notorious, visible, and exclusive. Even though the parties were mistaken as to where the true boundary was, the possession of the disputed strip of land by Lawson and her lessees was hostile and under claim of ownership. These elements can be inferred from the use of the land by the adverse possessor. In *Cooper* v. *Tarpley, supra,* the court said:

". . . In this state, when an owner of land, by mistake as to the boundary line of his land, takes actual, visible and exclusive possession of another's land and holds it as his own continuously for the statutory period of twenty years, he thereby acquires the title as against the real owner." (Citations omitted)

Therefore, although no real intent existed on Lawson's part to occupy and use the land of another, such intent is imputed to her and to her successors in title from their use of the property and from the other party's acquiescence in that use.

Lawson's possession was actual because the possession of her lessees inured to her for the purposes of showing her

adverse possession of the disputed strip of land. See *Abel* v. *Love* (1924), 81 Ind. App. 328, 143 N.E. 515.

Since Lawson met the tests set forth in *Fort Wayne Smelting and Refining Works* v. *City of Fort Wayne, supra,* her possession of the disputed strip of land is deemed by us to have been adverse. Therefore, her period of adverse possession can be tacked to Colley's, and the twenty year statutory requirement will be met.

The only remaining question to be determined is that of the payment of taxes. IC 1971, 32-1-20-1 (Burns Code Ed.) provides that all taxes and special assessments which fall due on land held in adverse possession must be paid by the possessor. The facts indicate that no taxes were paid on the disputed strip of land. Therefore, the rule in *Longabaugh* v. *Johnson* (1975), 163 Ind. App. 108, 321 N.E.2d 865, applies, wherein the court held that only the taxes falling due on the property need be paid; where no taxes are assessed none need be paid. It follows that Colley, by virtue of paying all taxes for which he was assessed, has met the requirements of IC 1971, 32-1-20-1, *supra.*

We now hold that, as a matter of law, the facts presented to us in this appeal show that Colley complied with each and every element enumerated above and that the disputed strip of land belongs to him under the doctrine of adverse possession.

Judgment reversed and cause remanded to the trial court with instructions to enter a judgment in a manner consistent with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 362 N.E.2d 163.