Ted G. COLLINS, Appellant-Plaintiff,

v.

William GILBREATH,
Appellee-Defendant.

No. 2–478A126.

Court of Appeals of Indiana,
Fourth District.

April 29, 1980.

Herbert W. Johnson, Jr., White & Johnson, Indianapolis, for appellant-plaintiff.

Eric C. Jodka, Indianapolis, for appellee-defendant.

CHIPMAN, Judge.

This is an appeal from a habeas corpus proceeding. The action was instituted by appellant Ted Collins to gain custody of his three children who were living with their stepfather, William Gilbreath. The court awarded Collins custody of the children but ordered him to permit Gilbreath visitation rights and pay Gilbreath $750 in support arrearages. Collins' appeal protests the visitation and support arrearages orders. We affirm in part and reverse in part.

## FACTS

The marriage of Ted and Lynne Collins produced three children—Ronda, Staci and Traci. On September 10, 1974, in Johnson County, Indiana, Ted and Lynne were divorced and Lynne was awarded custody of the children. In August of 1975 Lynne married William Gilbreath. Ted also remarried. On September 4, 1977, Lynne committed suicide. Within ten days Collins brought this habeas corpus action to regain custody of his children from Gilbreath.

## ISSUES

The issues necessary to our resolution of this appeal are:

I. Was it an abuse of discretion for the court to grant the stepfather, William Gilbreath, the right of visitation?

II. Whether the court erred in ordering Collins to pay Gilbreath support arrearages?

## I. VISITATION

Collins vigorously contends the court's visitation order is contrary to law. He asserts the awarding of visitation to Gilbreath, an unrelated third person, is not authorized by Indiana law and may adversely affect the children's well-being. He also points up Gilbreath's failure to file any pleadings or counterpetition in response to Collins' habeas corpus petition. Unfortunately, Gilbreath has failed to provide this court with a brief. Thus we may reverse if Collins has established a prima facie case. *E. g., Colley v. Carpenter,* (1977) Ind.App., 362 N.E.2d 163. We note this rule is for the benefit of this Court, not appellant. Its application is wholly discretionary. *Ligon Specialized Haulers, Inc. v. Hott,* (1979) Ind. App., 384 N.E.2d 1071.

There is a dearth of Indiana law on the precise issue before us. *Ind. Code* 31–1–11.-5–24 grants a *parent* the right of reasona-

ble visitation, but is silent on the existence of such rights for nonparents. Turning to foreign jurisdictions, we perceive a thread running through the cases. Where the parent who has custody of the child objects to visits by a third party the courts generally deny visitation rights. This is particularly true where the relationship between the parties is so strained as to affect the well-being of the child. *E. g., Veazey v. Stewart,* (1971) 251 Ark. 334, 472 S.W.2d 102; *Odell v. Lutz,* (1947) 78 Cal.App.2d 104, 177 P.2d 628. *But see Commonwealth ex rel. Goodman v. Dratch,* (1960) 192 Pa.Super. 1, 159 A.2d 70. If the custodial parent raises no serious objections, however, visitation rights are usually extended to the third party. *E. g., Bookstein v. Bookstein,* (1970) 7 Cal.App.3d 219, 86 Cal.Rptr. 495; *Lucchesi v. Lucchesi,* (1947) 330 Ill.App. 506, 71 N.E.2d 920.

We find these cases instructive but not determinative of the issue before us. When the judicial system becomes involved in family matters concerning relationships between parent and child, simplistic analysis and the strict application of absolute legal principles should be avoided. The mere protest of a parent who asserts that visitation by another person would somehow harm his or her child should not be enough to deny visitation in all cases. *See Lo Presti v. Lo Presti,* (1976) 51 A.D.2d 578, 378 N.Y.S.2d 487. This is especially true where the third party has cared for a child as his or her own. As in custody disputes, the well-being of the child must be paramount. *See Spencer v. Spencer,* (1977) Okl.App., 567 P.2d 112. Although the legal right of a parent to custody of a child is superior to the legal right of all others, this right is not absolute. As one court appropriately observed, a parent's right of custody is not akin to a property right, but is more in the nature of a trust which may be subject to the well-being of the child as perceived by the courts of this state. *Looper v. McManus,* (1978) Okl.App., 581 P.2d 487, citing *Carignan v. State,* (1970) Okl., 469 P.2d 656.

In this case the trial court was faced with a difficult dilemma. The court had before it two men equally fit to be a father to the three young girls. Each man was capable of providing a comfortable home and each expressed a great deal of love for the children. An in camera hearing with the children revealed they loved both their father and stepfather very much. They were understandably confused and frightened, given the recency of their mother's suicide and the hastily called habeas corpus hearing to determine with whom they would live. Under these facts the court properly granted custody to Collins, the natural father.

The court also acted properly in granting visitation to Gilbreath, the stepfather. Although there was some evidence of "bad blood" between Collins and Gilbreath these feelings were manifested shortly after Lynne's death, an emotional period for both men. In view of the situation and the well-being of the children, this was not sufficient to justify denying Gilbreath visitation. As the trial court pointed out Gilbreath had loved and cared for the children as a father for two and one-half years. To abruptly end this close relationship and deny him the privilege of ever seeing the girls again would be unfair and traumatic to both Gilbreath and the three young girls. The children would in essence lose their second parent in ten days—one by suicide and one by court decree. Visitation with their stepfather provided a necessary transition to their new life with their natural father. The trial court apparently had these thoughts in mind when it granted Gilbreath visitation despite the lack of a specific request to do so. This order was not only well within the court's discretion but a wise decision by a thoughtful and insightful judge.

In so holding we do not intend to diminish the rights of a natural parent concerning his or her minor children. Nor do we intend to open the door and permit the granting of visitation rights to a myriad of unrelated third persons, including grand-

parents,[1] who happen to feel affection for a child. Our decision is explicitly limited to the type of factual situation presented by this case, i. e., where the party· seeking visitation has acted in a custodial and parental capacity. *Simpson v. Simpson*, (1979) Ky., 586 S.W.2d 33 (stepmother who had cared for child .from 17 months to 6 years old should not be denied visitation); *Looper v. McManus*, (1978) Okl.App., 581 P.2d 487 (grandparents and stepmother who were "surrogate parents" for years granted visitation).

## II. SUPPORT ARREARAGES

█ In his second argument, Collins argues the court erroneously ordered him to make arrearage payments to Gilbreath. It is Collins' position that Gilbreath was not a real party in interest to the support order and thus could not be awarded arrearages in this habeas corpus proceeding. We agree.

The support order upon which the arrearages were based was entered by the Johnson Superior Court. The two parties to that action were Ted and Lynne Collins. Thus, any support arrearages were due Lynne Collins Gilbreath, or more particularly, her estate. Although Gilbreath may be the primary beneficiary of Lynne's estate there was no evidence whatsoever on this point. Therefore, we must conclude the court's arrearages order was based upon speculation and conjecture, however reasonable. This was improper. *See Credit Bureau of Fulton County, Inc. v. Faulstitch*, (1964) 135 Ind.App. 511, 195 N.E.2d 359.

█ We also note the Marion Superior Court was not the proper venue for the resolution of the arrearages question. This issue should be decided in the Johnson Superior Court where the support order was first issued. *Pund v. Pund*, (1976) Ind.App., 357 N.E.2d 257. Collins, however, has failed to preserve this issue for review. *Pund v. Pund, supra.*

Affirmed in part, reversed in part.

MILLER, P. J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

I dissent in part.

The trial court had no statutory or common law authority to award visitation of these children to Gilbreath, their deceased mother's second husband who was an unrelated third party. *Odell v. Lutz*, (1947) 78 Cal.App.2d 104, 177 P.2d 628; *Noll v. Noll*, (1950) 277 App.Div. 286, 98 N.Y.S.2d 938. See *Mimkon v. Ford*, (1975) 66 N.J. 426, 332 A.2d 199, and *Geri v. Fanto*, (1974) 79 Misc.2d 947, 361 N.Y.S.2d 984, for discussions of the common law. *See generally* Annot: 90 A.L.R.3rd 233. Such an order is particularly inappropriate when done *sua sponte*. It was contrary to law. An unrelated third party has no standing to make such a request in the absence of a judicial determination that the natural parent is an unfit person to have custody of minor children. *Jackson v. Fitzgerald*, (D.C.Mun.App. 1962) 185 A.2d 724, 98 A.L.R.2d 322.

The natural father is entitled to custody of minor children of the marriage upon the death of the custodial parent unless he is unfit. *State ex rel. Gregory v. Superior Court of Marion County, Room 1*, (1961) 242 Ind. 42, 176 N.E.2d 126; *Hendrickson v. Binkley*, (1974) 161 Ind.App. 388, 316 N.E.2d 376, cert. denied 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98. Custodial parents have the right to determine with whom their children shall associate. *Chodzko v. Chodzko*, (1976) 66 Ill.2d 28, 4 Ill.Dec. 313, 360 N.E.2d 60; 59 Am.Jur.2d Parent and Child § 45 (1971). Thus, most courts have held that visitation privileges of grandparents cannot be upheld if the custodial parent objects. See *Mimkon v. Ford, supra*, 332 A.2d at 200–01, and the cases collected therein. Such privileges abridge the natural parents' right to custody. *Jackson v. Fitzgerald,*

1. A number of jurisdictions have statutes permitting grandparents the right to request visitation. *E. g.*, N.Y. Domestic Relations Law § 72 (1977); Okl.Stat. tit. 10, § 5 (1975). If such a policy were to be adopted in Indiana we believe the adoption should occur in a legislative, not judicial, forum.

*supra*; *Lucchesi v. Lucchesi*, (1947) 330 Ill. App. 506, 71 N.E.2d 920.

It is particularly important that Gilbreath is not related to the children. Visitation concerns parents not strangers to the family. IC 31–1–11.5–24. The right of visitation derives from the right to custody. *Jackson v. Fitzgerald, supra. Cf. Franks v. Franks*, (1975) 163 Ind.App. 346, 323 N.E.2d 678 (parental right to custody continues even after adverse custodial ruling). The right of custody in this context is an incident of the parent-child relationship. *See Major v. Welch*, (1954) 233 Ind. 592, 122 N.E.2d 79, 80. When that relationship is terminated, as by an adoption decree, one right the parent loses is the right to ever see his child again. *Bristow v. Konopka*, (1975) 166 Ind.App. 357, 336 N.E.2d 397, 400; *Bryant v. Kurtz*, (1963) 134 Ind.App. 480, 189 N.E.2d 593.

The case of *English v. Macon*, (1970) 46 Ala.App. 81, 238 So.2d 733, is most nearly applicable to the present case. There, a child who had been adjudged dependent and neglected and whose permanent custody was awarded to the State Department of Pensions and Security, lived in the petitioner's home for six years as a foster child. The court found that the petition for visitation failed to state a claim because it alleged neither kinship with the child or that adoption proceedings had ever been instituted: "We find no averment in this petition that would support any sort of custodial right or claim on the part of [the petitioner] and without such allegation the petition is without equity and the court without jurisdiction of the subject matter." The court noted that the State Department of Pensions and Security acquired all the rights and duties of natural parents by virtue of the custody award, and concluded:

> If the natural parents of a child should send it to boarding school for several years, then withdraw it, would the headmaster have acquired visitation rights against the wishes of the natural parents because he had become fond of the child and wanted to 'ascertain its welfare from time to time?' We think the answer of

any court would be a resounding "no" and that most courts would dismiss the petition ex mero motu.

I concur with the reversal of the trial court upon the issue of support arrearages.