Nicole A. SCHAFFER, Appellant–Respondent,

v.

Robert J. SCHAFFER, Appellee–Petitioner.

No. 22A04–0709–CV–513.

Court of Appeals of Indiana.

April 23, 2008.

to be aggregated by the Policyholders are based on products that share the same defect

or deficiency.

Joseph P. Weber, Mickey K. Weber, Jeffersonville, IN, Attorneys for Appellant.

Richard R. Fox, Steven A. Gustafson, New Albany, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Nicole A. Schaffer appeals the trial court's denial of her request to terminate third party stepparent Robert J. Schaffer's visitation rights with her daughter, M.S. Specifically, Nicole argues that the trial court's denial violated her due process rights because the court failed to apply a parental presumption favoring her decisions regarding the care, custody, and control of M.S. Finding that this parental presumption applies to initial visitation proceedings but that Nicole did not appeal the order establishing visitation between Robert and M.S., we conclude that the parental presumption does not apply to the modification of visitation. As such, because Nicole has failed to prove that it is in the best interests of M.S. to terminate visitation with Robert, we affirm the judgment of the trial court.

### Facts and Procedural History

In February 2000, Robert and Nicole married. On April 26, 2001, Nicole gave birth to M.S. Although Robert is not M.S.'s biological father and he was aware from the time Nicole was pregnant with M.S. that he was not her biological father, he was listed as M.S.'s father on her birth certificate. Robert also cared and provided for M.S. for the first two and one-half years of her life. Robert and Nicole separated in November 2003. Upon separation, Robert stopped living in the same household as Nicole and M.S. In July 2004, Robert filed a petition for dissolution of marriage. Robert exercised visitation with M.S. throughout the dissolution proceedings. The parties' marriage was dissolved in May 2006. Upon dissolution, Nicole was awarded sole custody of M.S. and Robert was awarded visitation because of his custodial relationship with M.S. during those two and one-half years and be-

cause visitation was in M.S.'s best interests. *See* Appellant's App. p. 6 (Finding No. 11). Specifically, Robert "was granted visitation one weekend per month from Noon on Saturday until 6:00 p.m. on Sunday, one weeknight every other week from 5:30 p.m. until 7:30 p.m. . . . and one week during the summer." *Id.* at 7 (Finding No. 12). No appeal was taken from this 2006 order of visitation.

On February 21, 2007, when M.S. was almost six years old, DNA testing confirmed that Charles Moon is M.S.'s biological father. Pursuant to the Indiana Parenting Time Guidelines, Moon was awarded parenting time and ordered to pay support in accordance with the Indiana Child Support Guidelines.

Although Robert and Moon both exercised their respective parenting time, issues developed between Robert and Nicole concerning the scheduling of Robert's visitation. As a result, on January 9, 2007, Robert filed a petition to modify visitation. He included a proposed visitation schedule for the calendar year of 2007 and asked for reasonable telephone visitation with M.S. Nicole filed a response in which she requested that the court terminate Robert's visitation rights because he is not M.S.'s biological father. Thereafter, the trial court held a hearing. On July 17, 2007, the trial court entered findings of fact and conclusions of law reducing Robert's visitation and denying Nicole's request for termination of those rights. Nicole now appeals from the trial court's order denying her request to terminate Robert's visitation rights.

### Discussion and Decision

Nicole contends that the trial court erred by denying her request to terminate Robert's visitation rights. In doing so, the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Thus, we must determine whether the evidence supports the findings and whether the findings support the judgment. *Staresnick v. Staresnick*, 830 N.E.2d 127, 131 (Ind.Ct.App.2005), *reh'g denied.* The findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind.2005).

Specifically, Nicole argues that the trial court violated her fundamental right as set forth in *Troxel v. Granville* to make decisions concerning the care, custody, and control of her child. 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."). Nicole maintains that she should have been afforded a parental presumption that her decisions concerning third party visitation with M.S. are in M.S.'s best interests and should be accorded special weight. Nicole acknowledges that Indiana case law has allowed third party visitation to be awarded to an unrelated adult who was once a child's stepparent, *see Nunn v. Nunn*, 791 N.E.2d 779 (Ind.Ct.App.2003); *Francis v. Francis*, 654 N.E.2d 4 (Ind.Ct.App.1995), *trans. denied; In re the Custody of Banning*, 541 N.E.2d 283 (Ind.Ct.App.1989); *Tinsley v. Plummer*, 519 N.E.2d 752 (Ind.Ct.App.1988), but relies on grandparent visitation cases to support her general argument that "a step-parent should be held to at least the standard imposed upon grandparents seeking visitation." Appellant's Br. p. 10. In furtherance of this general belief, Nicole maintains that in a case such as this where

there is no familial relationship to protect, no absent or deceased parent in whose shoes the step-parent might stand, no threat of harm or finding that the child's natural parent is unfit, an even sterner rule is appropriate to protect the constitutional interests of the parent. In such a situation, where there is no competing interest commensurate to the liberty interest of the natural parent, third-party visitation should be held to be a *per se* violation of the parent's constitutional right to rear her child and make decisions concerning the care, custody, and control of her child.

*Id.* at 10. Understanding Nicole's position requires saying a few words about *Troxel* and its progeny.

In *Troxel*, the United States Supreme Court reiterated the age-old principle that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66, 120 S.Ct. 2054. The Court noted the extensive case precedent establishing this right and stated that it "is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* at 65, 120 S.Ct. 2054. The Supreme Court ultimately held that the Washington grandparent visitation statute, as applied to Granville, unconstitutionally infringed on this fundamental parental right. The Court further noted that there is a "presumption that fit parents act in the best interests of their children" and that "[t]he problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination

of her daughter's best interests." *Id.* at 68–69, 120 S.Ct. 2054. Therefore, the Court determined that

> [t]he decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters. In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Id.* at 69–70, 120 S.Ct. 2054 (citations omitted).

Subsequent to *Troxel*, this court ruled on the constitutionality of Indiana's Grandparent Visitation Statute.[1] In *Crafton v. Gibson*, this Court, applying *Troxel*, held that Indiana's Grandparent Visitation Statute was not unconstitutional on its face. 752 N.E.2d 78, 98 (Ind.Ct.App.2001). *Crafton* additionally discussed certain factors courts must take into consideration when determining a child's best interests under the Grandparent Visitation Statute. *Id.* at 96–97. First, courts must "presume that a fit parent's decision is in the best interest of the child." *Id.* at 96. Acting

---

**1.** Before *Troxel* was decided, this Court determined that Indiana's Grandparent Visitation Statute did not violate a parent's fundamental right to control the upbringing of his or her child. *See Sightes v. Barker*, 684 N.E.2d 224 (Ind.Ct.App.1997) (stating that the statute passed both rational basis review and strict scrutiny), *trans. denied.*

under this presumption, courts must accord special weight to a parent's decision to deny or limit visitation. *Id.* at 96–97. Finally, a court should give some weight to the fact that a parent has previously agreed to some visitation. *Id.* at 97.

■ Thereafter, as a result of *Troxel* and *Crafton,* this Court, in *McCune v. Frey,* 783 N.E.2d 752 (Ind.Ct.App.2003), established certain substantive requirements for trial courts to consider when issuing findings and conclusions in grandparent visitation cases. These requirements include

1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.

*Id.* at 757; *see also Ramsey v. Ramsey,* 863 N.E.2d 1232, 1238 (Ind.Ct.App.2007); *Megyese v. Woods,* 808 N.E.2d 1208, 1216 (Ind.Ct.App.2004); *Spaulding v. Williams,* 793 N.E.2d 252, 257 (Ind.Ct.App.2003).

■ Although the cases above involve initial grandparent visitation proceedings, Nicole asks us to extend them to stepparent visitation proceedings. We agree with Nicole that the same parental presumption and special weight accorded to parents in an initial grandparent visitation proceeding should be extended to parents in an initial third party stepparent visitation proceeding. We see no reason why a stepparent should not be held to the same standard as a blood relative, such as a grandparent, in an initial visitation determination. However, in this case we are not asked to address an *initial* stepparent visitation order. Pursuant to the May 2006 divorce decree, Robert was granted visitation rights with M.S., and Nicole simply did not appeal that order. As such, Nicole cannot now allege error based on the trial court's failure to apply *Troxel* and its progeny to that stage of these proceedings. Instead, we are asked to address the trial court's denial of Nicole's request to terminate Robert's third party stepparent visitation rights.

This Court addressed a third party stepparent visitation issue in *Francis,* 654 N.E.2d 4. In that case, Robert and Anita Francis were married for ten years. During the marriage, Anita bore two children. Robert and Anita both cared for the children. It was later discovered that Anita was having a long-term affair with William Carothers. Robert and Anita dissolved their marriage. As part of the dissolution, blood tests were performed that conclusively determined that Carothers fathered the two children. Pursuant to the best interests of the children, the trial court awarded Anita custody of the children and granted Robert liberal visitation. Soon thereafter, Anita and Carothers married, and Carothers began to have difficulties accepting Robert's visitation, "feeling it created discipline and behavioral problems for the children." *Id.* at 5. As a result, Anita and Carothers reduced Robert's visitation. In response, Robert petitioned the trial court to enforce the initial visitation order. Anita responded by filing a motion requesting modification of Robert's visitation. At the conclusion of the trial, the trial court expanded Robert's visitation, finding this to be in the children's best interests.

On appeal, Anita argued "that the trial court erred in failing to reduce Robert's visitation and instead expanding that visitation." *Id.* at 6–7. She asserted "that the interest she and [Carothers] have in avoiding extra-familial distractions outweighs Robert's interest in visitation." *Id.* at 7. In disposing of this matter, we first held that to adequately establish grounds

for visitation, a third party must show the existence of a custodial and parental relationship and that visitation would be in the best interests of the children. *Id.* We additionally held that "[a] parent's mere protest that visitation with the third party would somehow harm the family is not enough to deny visitation in all cases, particularly where the third party cared for the children as his own." *Id.* While acknowledging that parents have primary custody rights over their children, we noted that this right " 'is not akin to a property right, but is more in the nature of a trust which may be subject to the wellbeing of the child as perceived by the courts of this state.' " *Id.* (quoting *Collins v. Gilbreath,* 403 N.E.2d 921, 923 (Ind.Ct. App.1980)). As such, we concluded that the trial court did not err by expanding Robert's visitation rights because the two children lived with Robert as their father for ten and six years, respectively, and therefore significant contact with Robert was in the children's best interests. *Id.*

▮ Although *Francis* involved modification of visitation, it set forth the standard for establishing visitation, that is, the existence of a custodial and parental relationship and that visitation would be in the best interests of the children. *Id.* However, where, as here, the issue is merely modifying visitation—whether increasing, decreasing, or terminating it altogether— the only relevant inquiry is the best interests of the child. This is because the existence of a custodial and parental relationship was already established when the third party was initially awarded visitation. The party requesting the modification or termination of visitation bears the burden of proof. *See Arms v. Arms,* 803 N.E.2d 1201, 1212 (Ind.Ct.App.2004). Here, Nicole asked the trial court to terminate Robert's visitation rights, so she bore the burden of proof.

▮ In denying Nicole's request to terminate visitation, the trial court's order provided:

### FINDINGS OF FACT

* * * * *

20. It is uncontroverted that [Robert] for all intents and purposes was [M.S.'s] father from the time of her birth until the parties' divorce.

21. It is uncontroverted [Robert] and [M.S.] care about each other.

* * * * *

27. [Nicole] contends that it is not in [M.S.'s] best interests to continue visitation with [Robert] and that [Robert's] visitation should be terminated. She believes that continuing visitation:

    a.) interferes with [M.S.] building a father-daughter relationship with Mr. Moon.

    b.) will cause confusion about the nature of [M.S.'s] relationship with Mr. Moon.

    c.) will make [M.S.'s] home life less stable due to dividing time between three (3) households.

    d.) will interfere with parental decisions about her upbringing.

    e.) will interfere with her participation in educational, extracurricular and recreational activities.

    f.) creates a strain on [M.S.'s] relationship with her mother and will deprive [Nicole] of her parenting time with [M.S.].

28. It is undisputed that [Robert] is not unfit to care for [M.S.] and, in fact, cared for [M.S.] from her birth until the parties' separation.

29. No testimony from a child Psychologist, licensed clinical Social Worker, Counselor or therapist substantiating

[Nicole's] concerns and contentions was presented by [Nicole].

30. No evidence was presented that continuing visitation by [Robert] would endanger [M.S.'s] physical health or significantly impair her emotional development.

\* \* \* \* \*

### CONCLUSIONS OF LAW

1. Based on the fact that Mr. Moon has now been determined to be [M.S.'s] biological father and is exercising parenting time with her under the parenting time guidelines, [Nicole] has established by a preponderance of the evidence that a modification of [Robert's] visitation with [M.S.] is in her best interests so that the father-daughter relationship can be fully developed.

2. [Robert's] visitation rights should also be modified based on the following facts: as custodial parent of [M.S.] [Nicole's] parenting should not be significantly diminished just to accommodate [Robert's] visitation rights; [Nicole's] custodial authority over [M.S.] should not be interfered with just to accommodate [Robert's] visitation rights, and [Nicole's] impending marriage and the development of a step-father/step-daughter relationship nor the operation of [Nicole's] household should be diminished just to accommodate [Robert's] visitation rights.

3. [Nicole] has not proved by a preponderance of the evidence that termination of [Robert's] visitation with [M.S.] is in her best interests. [Robert] has previously established a custodial and parental relationship with [M.S.]. Also, this Court has previously found that visitation by [M.S.] with [Robert] is in her best interests. The evidence presented by [Nicole] was speculative and insufficient to support termination of [Robert's] visitation rights.

Appellant's App. p. 9, 11–12.

As recognized by the trial court, Nicole did not introduce any evidence from a child psychologist, licensed clinical social worker, counselor, or therapist to substantiate her assertion that terminating Robert's visitation was in the best interests of M.S. In addition, it is undisputed that Robert is not unfit, and Nicole did not introduce any evidence that Robert would endanger M.S. "A parent's mere protest that visitation with the third party would somehow harm the family is not enough to deny visitation in all cases, particularly where the third party cared for the children as his own." *Francis,* 654 N.E.2d at 7. Accordingly, the trial court's determination that it is not in M.S.'s best interests to terminate Robert's visitation is not clearly erroneous.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.