

FILED
Nov 09 2016, 9:45 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kelly D. Corne
Corne & Corne, LLC
Newburgh, Indiana

ATTORNEY FOR APPELLEE

Katharine Vanost Jones
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amy L Brown,<br>*Appellant,*<br><br>v.<br><br>Adrian Lunsford,<br>*Appellee.* | November 9, 2016<br><br>Court of Appeals Case No.<br>82A04-1602-JP-357<br><br>Appeal from the Vanderburgh<br>Superior Court<br><br>The Honorable Richard J.<br>D'Amour, Judge<br><br>Trial Court Cause No.<br>82D07-1109-JP-653 |

**Barnes, Judge.**

## Summary

[1] Amy Brown appeals the trial court's order granting visitation with Brown's daughter, S.B., to Adrian Lunsford, Brown's former boyfriend, who is unrelated to S.B. We reverse.

# Issues

[2] Brown presents three issues for our review, which we restate as:

    I.      whether the trial court had "jurisdiction" to order visitation between Lunsford and S.B.;

    II.     whether Lunsford should have joined S.B. as a necessary party in the paternity action involving the parties' child A.L.; and

    III.    whether the trial court abused its discretion by ordering visitation between S.B. and Lunsford.

# Facts

[3] S.B. is Brown's daughter. S.B. was born in January 2007, and her biological father is neither involved in her life nor listed on her birth certificate. Brown and S.B. moved into Lunsford's house in Kentucky when S.B. was sixteen months old. When S.B. was two years old, Lunsford and Brown's son A.L. was born. Brown and Lunsford were never married. When S.B. was four years old, Lunsford and Brown separated. Brown and the children moved to Vanderburgh County, Indiana.

[4] After Brown and Lunsford separated, S.B. visited Lunsford when Lunsford had parenting time with A.L. for "six (6) months the first time around and then [Brown] pulled her out for almost two (2) years and then maybe a year, maybe a little over a year the second time around that she went . . . so a year and a half total." Tr. p. 204. S.B. does not want to visit Lunsford. Brown discontinued S.B.'s visits with Lunsford "Because I noticed some behavioral changes in her . . . she would cry a lot, she was very confused, she was getting in trouble at

school which was not . . . her at all." *Id.* at 204-05. Brown testified, "With [S.B.] [the behavioral changes were] kind of a continual thing until she was no longer down and then, you know, all the issues I had with school and things like that ceased." *Id.* at 206. Brown does not believe it is in S.B.'s best interests to visit Lunsford. At the time of the evidentiary hearing in this matter, Brown and Lunsford had been separated for over four years, and S.B. had not visited Lunsford since "last year some time." *Id.* at 23. The trial court did not appoint a guardian ad litem, and it did not interview or otherwise hear from S.B. directly regarding visitation with Lunsford.

[5] On September 15, 2011, the State filed a Petition for Order of Support in a paternity action captioned: "In re the Paternity of [A.L.] by next friend, Amy L. Brown, Petitioner and Adrian Lunsford[,] Respondent." App. p. 12. The trial court ordered Lunsford to pay child support for A.L. Thereafter, Lunsford filed, and the trial court granted, a request for parenting time with A.L. The parties also filed an agreed entry regarding retroactive child support for A.L. and a mediated agreed order regarding parenting time between Lunsford and A.L. None of these motions and orders were related to S.B. In June 2015, Brown, S.B., and A.L. relocated to Tennessee.

[6] In September 2015, Lunsford filed a "Petition to Modify," in which he requested an order granting him parenting time with S.B., "his stepdaughter since he was the only parent the child had known and that the mother has refused any parenting time . . . ." App. p. 35. Neither Brown nor Lunsford moved to join S.B. as a party to the paternity action regarding A.L. On

December 9, 2015, the trial court heard evidence related to Lunsford's request for visitation with S.B.[1] On December 10, 2015, the trial court granted Lunsford visitation with S.B. one weekend per month during Lunsford's parenting time with A.L.

Brown then filed a motion to correct error and, simultaneously, a motion to reconsider and/or rehearing. In her motion to correct error, Brown raised, for the first time, arguments styled as improper forum, lack of jurisdiction, improper venue, and lack of standing. The trial court heard arguments on Brown's motions and, on February 3, 2016, it denied them. Brown now appeals.

## Analysis

### I. "Jurisdiction" to Order Visitation

Brown first contends the trial court lacked "jurisdiction" over S.B. because she was not a resident of Indiana and because "no action has been formally commenced." Appellant's Br. p. 11.

Brown does not contend the trial court lacked either subject matter or personal jurisdiction to hear this matter. Instead, she argues, generally, that the trial court did not have "jurisdiction" over S.B. and cites to a portion of Indiana's

---

[1] The trial court also heard evidence in order to determine custody and parenting time for A.L., child support issues, and to rule on Brown's request to relocate. Brown does not challenge those portions of the trial court's order.

codification of the Uniform Child Custody Jurisdiction Act ("UCCJA") to support her argument. The relevant statute provides:

(a) Except as otherwise provided in section 4 of this chapter, an Indiana court has jurisdiction to make an initial child custody determination only if one (1) of the following applies:

(1) Indiana is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six (6) months before the commencement of the proceedings, and the child is absent from Indiana but a parent or person acting as a parent continues to live in Indiana.

(2) A court of another state does not have jurisdiction under subdivision (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that Indiana is the more appropriate forum under section 8 or 9 of this chapter; and:

(A) the child and the child's parents, or the child and at least one (1) parent or person acting as a parent, have a significant connection with Indiana other than mere physical presence; and

(B) substantial evidence is available in Indiana concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction under subdivision (1) or 2) have declined to exercise jurisdiction on the ground that an Indiana court is the more appropriate forum to determine the custody of the child under section 8 or 9 of this chapter.

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

(b) The jurisdictional requirements described in this section provide the exclusive jurisdictional basis for making a child custody determination by an Indiana court.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

"In 1990, our Supreme Court held that the jurisdictional limitations imposed by the UCCJA are not that of subject-matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case." *In re Marriage of Kenda and Pleskovic*, 873 N.E.2d 729, 735 (Ind. Ct. App. 2007) (citing *Williams v. Williams*, 555 N.E.2d 142, 145 (Ind. 1990)), *trans. denied*. "This exercise of authority is waivable." *Williams*, 555 N.E.2d at 145.

Our supreme court has clarified "the nature of jurisdiction in Indiana trial courts" and held that the concept of "jurisdiction over a particular case" has been abolished. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012) (citing *K.S. v. State*, 849 N.E.2d 538, 540-41 (Ind. 2006)). In *K.S.*, our supreme court discussed the difference between procedural defects and "the law of jurisdiction." *K.S.*, 849 N.E.2d at 541. "Attorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.*

> To act in a given case, a trial court must possess both subject matter jurisdiction and personal jurisdiction. Subject matter jurisdiction exists when the Indiana Constitution or a statute grants the court the power to hear and decide cases of the general class to which any particular proceeding belongs. Personal jurisdiction exists when a defendant both has sufficient minimum contacts within the state to justify a court subjecting the defendant to its control, and has received proper notice of a suit against him in that court.

*R.L. Turner Corp.*, 963 N.E.2d at 457 (citing *K.S.*, 849 N.E.2d at 538, 540).

> Thus, while we might casually say, "Judge Flywheel assumed jurisdiction," or "the court had jurisdiction to impose a ten-year sentence," such statements do not have anything to do with the law of jurisdiction, either personal or subject matter. *Real* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as "jurisdictional" misapprehends the concepts.

*K.S.*, 849 N.E.2d at 541-42 (citations omitted). "[A] party who was asleep at the wheel has a powerful incentive to couch a claim of procedural error as a jurisdictional defect either to circumvent the doctrine of waiver or to open up an avenue for collateral attack." *R.L. Turner Corp.*, 963 N.E.2d at 457 (citing *K.S.*, 849 N.E.2d at 541).

[12]  Brown did not lodge her claims of procedural error (which she incorrectly framed as "jurisdiction" issues) in a timely manner. Instead, she waited until she filed her motion to correct error to raise them. Her arguments are,

therefore, waived. *See Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) (holding generally that a party may not raise an issue for the first time in a motion to correct error).

## II. Necessary Party

[13] Brown next argues that the trial court's judgment is void or invalid because Lunsford did not join S.B. as a necessary party to the paternity action he used as a vehicle for requesting visitation with S.B. Brown directs us to Indiana Code Section 31-14-5-6, which provides that, in a paternity action, "The child, the child's mother, and each person alleged to be the father are necessary parties to each action." Brown also relies on *In re the Paternity of H.J.F.*, 634 N.E.2d 551 (Ind. Ct. App. 1994), in which this court held, "a paternity suit where the child has not been joined cannot result in a valid judgment." *Id.* at 553. But in *K.S. v. R.S.*, 669 N.E.2d 399 (Ind. 1996), our supreme court abrogated *H.J.F.* and held, "failure to name a child as a party in a paternity action does not necessarily render the judgment or agreement void, but merely voidable." *Id.* at 405. We need not determine how or if Lunsford's failure to join S.B. in this matter affected the validity of the trial court's judgment because Brown did not raise this issue in a timely manner.

[14] Brown could have raised this issue during or even prior to the evidentiary hearing in this matter but instead waited until she filed her post-trial motion to correct error to do so. Brown's argument, therefore, is waived. *See Dunson v. Dunson*, 769 N.E.2d 1120, 1126 (Ind. 2002) (concluding appellant waived his

necessary party argument by failing to move to join the indispensable party or dismiss action for lack of an indispensable party during trial proceedings).

### III. Visitation between Lunsford and S.B.

We next turn to the merits of Brown's appeal. Brown contends the trial court abused its discretion by granting Lunsford third-party visitation with S.B. absent "sufficient evidence of a parental relationship or sufficient analysis regarding the best interest of the child." Appellant's Br. p. 13.

With regard to the issue of visitation between S.B. and Lunsford, the trial court, sua sponte, issued brief findings of fact and conclusions thereon. "In this scenario, the specific findings control only with respect to the issues they cover, while a general judgment standard applies to issues outside the court's findings."[2] *In re Marriage of Sutton*, 16 N.E.3d 481, 484-85 (Ind. Ct. App. 2014). The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id.* at 485. A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it. *Id.*

Indiana trial judges are granted latitude and deference in family law matters. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for

[2] The sole substantive issue in this case is controlled by the trial court's findings of fact and conclusions thereon.

reversal." *Id.* (citation omitted). "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Id.* (citation omitted).

[18] Indiana courts have been cautious not to "open the door and permit the granting of visitation rights to a myriad of unrelated third persons . . . who happen to feel affection for a child." *Collins v. Gilbreath*, 403 N.E.2d 921, 923 (Ind. Ct. App. 1980) (footnote omitted). This court has "set out a two-part test for determining whether to grant visitation to a non-parent third party." *Worrell v. Elkhart Cnty Office of Family and Children*, 704 N.E.2d 1027, 1028 (Ind. 1998).

> To establish grounds for visitation, a third party must demonstrate the existence of a custodial and parental relationship and that visitation would be in the children's best interest. Under this regime, the first issue is standing and the second is the standard by which the question of visitation is adjudged after the cognizable right is established. Before a court may proceed to the substance of a visitation request, the party seeking visitation must satisfy the threshold requisite of a custodial and parental relationship.

*Id.* (quotations omitted) (citations omitted).

[19] "This court first addressed the issue of whether visitation may be awarded to an unrelated third party in *Collins v. Gilbreath*," and affirmed the trial court's order granting a stepfather visitation with his stepdaughters following the death of his wife, the girls' mother. *A.C. v. N.J.*, 1 N.E.3d 685, 694 (Ind. Ct. App. 2013). But *Collins* limited its holding "to the type of factual situation presented by this

case, i.e., where the party seeking visitation has acted in a custodial and parental capacity." *Collins*, 403 N.E.2d at 924.

[20] "This court's early third-party visitation cases did not hold, however, that standing to seek visitation was limited to stepparents." *A.C.*, 1 N.E.3d at 695. "[W]hen third-party visitation was denied, it was not done solely on the basis that the person seeking visitation was not a stepparent." *Id.* Nonetheless, since *Collins*, Indiana courts have closely guarded the ability of third parties to seek visitation with unrelated children. The Grandparent Visitation Act granted grandparents the right, in certain, limited circumstances, to request third-party visitation, and it also is well settled that stepparents may do so. In *Worrell*, our supreme court "substantially narrowed the scope of the right to seek third-party visitation" when it held that former foster parents lacked standing to seek third-party visitation. *A.C.*, 1 N.E.3d at 697. Pursuant to *Collins*, this court has also declined to extend standing to third parties it concluded had not acted in a custodial or parental capacity. *See Wolgamott v. Lanham*, 654 N.E.2d 890 (Ind. Ct. App. 1995) (concluding mother's ex-boyfriend was an "unrelated stranger" and had no "interest" in visitation with mother's daughter because he did not allege he was a stepparent or even part of the child's household during his six-year relationship with the child's mother); *Tinsley v. Plummer*, 519 N.E.2d 752 (Ind. Ct. App. 1988) (concluding child's great aunt and great uncle did not establish the threshold requisite of custodial and parental relationship with a child given that they saw the child approximately five times per year, primarily

at family functions and for approximately three months when they had court-ordered, temporary custody).

[21] Many years after *Collins*, in *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054 (2000), the Supreme Court "reiterated the age-old principle that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects 'the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" *Schaffer v. Schaffer*, 884 N.E.2d 423, 426 (Ind. Ct. App. 2008) (quoting *Troxel*, 530 U.S. at 66, 120 S. Ct. at 2060). In *Troxel*, the Supreme Court held the state of Washington's "breathtakingly broad" nonparental visitation statute—pursuant to which the trial court ordered grandparent visitation—was unconstitutional as applied to a mother because it infringed on her fundamental right to parent. *Troxel*, 530 U.S. at 67, 120 S. Ct. at 206. It stated:

> The decisional framework employed by the [trial court] directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters. In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Id.* at 69-70, 120 S. Ct. at 2062 (citations omitted). "The Supreme Court also noted that the trial court gave no weight to the fact that Granville had assented to some visitation." *Crafton v. Gibson*, 752 N.E.2d 78, 86 (Ind. Ct. App. 2001).

[22]    "In *Crafton v. Gibson*, this Court, applying *Troxel*, held that Indiana's Grandparent Visitation Statute was not unconstitutional on its face. *Crafton* additionally discussed certain factors courts must take into consideration when determining a child's best interests under the Grandparent Visitation Statute." *Schaffer*, 884 N.E.2d at 426 (citations omitted) (footnote omitted). "Thereafter, as a result of *Troxel* and *Crafton*, this Court, in *McCune v. Frey*, 783 N.E.2d 752 (Ind. Ct. App. 2003), established certain substantive requirements for trial courts to consider when issuing findings and conclusions in grandparent visitation cases." *Id*. *McCune* concluded:

> when a trial court enters a decree granting or denying grandparent visitation, it must set forth findings of fact and conclusions of law in said decree. In those findings and conclusions, the trial court should address: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.

*McCune*, 783 N.E.2d at 757; *see also K.I. ex rel J.I. v. J.H.*, 903 N.E.2d 453 (Ind. 2009) (approving the four *McCune* factors and requiring grandparent visitation order to address the factors in its findings and conclusions).

[23] In *Schaffer*, this court extended "the parental presumption and special weight accorded to parents in an initial grandparent visitation proceeding" to parents in "an initial third[-]party stepparent visitation proceeding." *Schaffer*, 884 N.E.2d at 427.[3] We, too, extend the parental presumption and special weight afforded parents to the case before us. We think it is only logical that, if such a presumption and special weight favoring a parent's choices for his or her child are appropriate in cases involving close familial and legal relationships between children and grandparents or stepparents, the same considerations should exist in cases such as the one before us.

[24] In *A.C. v N.J.*, this court, for the first time, held that a same-sex partner, who was not the child's biological parent, had standing to seek visitation with the child. *A.C.*, 1 N.E.3d at 697.

[25] This case asks us to determine whether Lunsford, who dated Brown and lived with Brown and S.B. from the time S.B. was sixteen months old until she was four years old, had standing to seek third-party visitation with S.B. when she was eight-and-one-half years old. Like *A.C.*, we acknowledge that custodial and parental relationships may exist with third parties other than stepparents and former same-sex partners. *Id.* However, in light of the very limited

---

[3] We recognize that, in *Richardson v. Richardson*, 34 N.E.3d 696, 702 n.4 (Ind. Ct. App. 2015), this court concluded this statement from *Schaffer* is dicta because *Schaffer* reviewed a request to *modify* a stepparent visitation order, not an initial order. Accordingly, absent a declaration otherwise from our supreme court, *Richardson* declined to extend the parental presumptions set out in *McClure* to a stepparent visitation order. *Richardson* notwithstanding, we find *Schaffer*'s extension of *McClure* to be logical and helpful here.

circumstances in which this court and our supreme court have allowed a third party to request visitation, we do not believe we may conclude Lunsford had standing to request visitation with S.B. in this case.

[26] Lunsford directs us to *A.C.* and argues that "trial courts [have] the authority to extend visitation rights to third parties," that such orders may benefit a child socially, psychologically, and culturally, and that "it is in the child's best interests to maintain relationships with those who have acted in a parental capacity." Appellee's Br. pp. 20-21. We conclude that *A.C.* is inapplicable to the facts of this case and, therefore, not controlling. We first note that, although *A.C.* recognized a parental or custodial relationship may exist between a child and a third party other than a stepparent, it also limited its holding to "the particular factual circumstances of [that] case." *A.C.*, 1 N.E.3d at 697.

[27] In *A.C.*, Mother and Partner entered into a same-sex domestic relationship and lived together for several years. They had a commitment ceremony. They decided together to have a child and that Mother would carry the child conceived through artificial insemination. Partner was present at the child's birth, and the three lived together as a family. The child referred to Mother and Partner as "Mama" and "Mommy," respectively. *Id.* at 687. Mother listed Partner as the child's co-parent on school enrollment paperwork, and the two discussed Partner adopting the child. When the child was two years old, Mother and Partner ended their relationship.

[28]     *A.C.* is inapplicable to this case for two reasons.  First, *A.C.* itself states that its holding is limited to that case's "particular factual circumstances."  *Id.* at 697.  Second, this court authored *A.C.* during a time when "the status of the law surrounding a lesbian partner's right, if any, to enjoy the rights of a legal parent of a child born to her partner" was "uncertain."  *Id.* at 692.  We explained in that case that the General Assembly had not offered any guidance on the legal questions surrounding such a circumstance, and "welcome[d] a legislative roadmap to help navigate the novel legal landscape in which we have arrived."  *Id.*  "Until that happens," *A.C.* explained, "we must do the best we can to resolve the issues that come before us."  *Id.*  This court's opinion in *A.C.* was one such effort.  And, now, same-sex partners may marry, which was impossible in Indiana when *A.C.* was decided.  *See Obergefell v. Hodges*, __ U.S. __, 135 S. Ct. 2584 (2015).  In light of the unique factual circumstances and particular legal landscape (which, since *Obergefell* is now altogether different) in which *A.C.* was decided, we do not believe we can fairly extend its holding or rationale to this case.  The cases are apples and oranges.

[29]     The trial court stated:

> 4.     The Father has acted as a step-parent to the Mother's child of another relationship, [S.B.].  In fact, the Father has been the only father-figure the child has ever known.  [S.B.] has established a bond with the Father and his family that should be maintained and which is in [S.B.]'s best interest.  The Father shall be entitled to visitation with [S.B.] one weekend per month during Father's regular parenting time with his son, [A.L.].

App. p. 39. The trial court's order does not take into consideration the decision that Brown, a fit parent, made to deny Lunsford visitation with S.B., nor is there any indication that Lunsford presented evidence compelling enough to overcome the presumption that Brown's decision to terminate S.B.'s visitation with Lunsford was in S.B.'s best interest. In light of *McCune* and *Shaffer*, we conclude the trial court abused its discretion by ordering visitation between S.B. and Lunsford.

## Conclusion

Brown has waived her contentions that the trial court erred when it adjudicated this matter pursuant to the UCCJA. Brown also waived her claim that Lunsford failed to join S.B. as a necessary party to this action. Nonetheless, we conclude the trial court abused its discretion when it ordered visitation between S.B. and Lunsford. We reverse.

Reversed.

Riley, J., and Bailey, J., concur.