## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 23 2018, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Monty K. Woolsey
Andrew R. Bloch
CROSS, PENNAMPED, WOOLSEY &
GLAZIER, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Diana C. Bauer
BAUER LEGAL LLC
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of A.M. and A.M. (Minor Children):

Brandi Miller,

*Appellant-Respondent,*

v.

Brock Hawthorne,

*Appellee-Petitioner.*

March 23, 2018

Court of Appeals Case No.
43A03-1710-JP-2369

Appeal from the Kosciusko
Superior Court

The Honorable David C. Cates,
Judge

Trial Court Cause No.
43D01-1705-JP-164

**Bailey, Judge.**

# Case Summary

Brandi Miller ("Mother") appeals the trial court order granting Brock Hawthorne ("Stepfather") third-party visitation rights with her children, A.M. and A.M. ("the twins"). While we agree with Mother that the trial court erred as a matter of law when it granted Stepfather visitation pursuant to the de facto custodian statute,[1] we affirm on the grounds that Stepfather was entitled to step-parent visitation because he had a custodial and parental relationship with the twins and visitation is in the twins' best interests.

Affirmed.

# Facts and Procedural History

On March 2, 2007, Mother gave birth to the twins. The twins' putative father is Travis Miller,[2] but the record does not disclose whether paternity of the twins has ever been established. In June 2007, Mother and the twins moved into Stepfather's home in Syracuse, Indiana. Mother gave birth to D.H., her and Stepfather's child, on March 24, 2009, and Mother and Stepfather married in August or September of 2014. In June 2016, Mother and Stepfather separated and Stepfather filed for dissolution of marriage.[3]

---

[1] Ind. Code § 31-9-2-35.5 (2017).

[2] Travis Miller did not participate in the trial court proceedings, and he does not participate in this appeal.

[3] The record does not disclose the outcome of the dissolution of marriage action.

[4]     On May 1, 2017, Stepfather filed a "Verified Motion for De Facto Custody [of the twins] or[,] in the Alternative, Step Parent Parenting Time."[4]  Appellant's App. at 3.  On May 26, the trial court appointed James L. Walmer as guardian ad litem ("the GAL") for the children, and the GAL filed his report on July 7.[5]  At a custody hearing on July 10, 2017, the GAL testified that he had interviewed the twins and D.H. and that all three children wished to live with Stepfather.  The GAL testified that the twins and D.H. all had a very close relationship with each other; that the twins became upset when D.H. was permitted to visit Stepfather but the twins were not; and that the twins were "adamant" that they wanted to live with Stepfather, who they called "father." Tr. at 7-8.  In fact, the twins thought Stepfather was their biological father until Mother informed them otherwise when they were around nine and a half years old.  The twins never had any contact with their putative father.

[5]     The GAL testified that Stepfather and Mother had both raised the twins and that it was "clear" that the twins loved them both.  *Id*. at 9-10.  From June 2007 until he separated from Mother in June 2016, Stepfather took care of the twins while Mother was at work by cooking meals for the twins, putting them to bed, helping them with homework, and spending a lot of time with them.  The GAL

---

[4] Stepfather filed the current case as a new cause of action.  Appellant's App. at 2-3.  And, while the CCS indicates the "action" is a "petition to establish paternity of a child,"—with a case type code of "JP"—the record contains no petition to establish paternity of the twins, and Stepfather has not alleged that he is the twins' biological father.  Thus, it appears this case should have been classified as a "Domestic Relations with Children" case, with the case type "DC."  Ind. Administrative Rule 8(B)(3).

[5] Neither the GAL report nor any other exhibits are contained in the record on appeal.

opined that it was in the twins' best interests for Stepfather to have custody of the twins because the twins had reported to him that Mother's new boyfriend had "hit them on their shoulders." *Id.* at 22-23. However, the GAL acknowledged that the Indiana Department of Child Services ("DCS") had investigated the allegations of abuse by Mother's boyfriend and found the allegations unsubstantiated.

[6] On July 18, 2017, the trial court, sua sponte, entered the following findings and order:

1. That Respondent, Brandi Miller, is the Mother of [the twins, A.M. and A.M.], both born March 2, 2007.

2. That Respondent, Travis Miller, is alleged to be the Father of [the twins] but, despite service, is not participating herein, and has not been a part of the children's lives.

3. That Petitioner, Brock Hawthorne, resided with Respondent, Brandi Miller, as well as with [the twins,] for approximately 8 ½ years.

4. That during the period in which [the twins] resided with Petitioner, Petitioner provided financial support for such children, although the primary financial support for the children came from Respondent, Brandi Miller.

5. That during the period Petitioner, Brock Hawthorne, resided with [the twins], Petitioner provided substantial care for the minor children, as if he was their father.

6. That there is a substantial bond between Petitioner and the children and harming or severing that bond would be emotionally harmful for the children.

7. That it is in the best interests of the minor children that Petitioner have custody of those children, including, but not limited to:

    7.1 Petitioner [is] known by the children as "dad" and was the only "dad" these children knew until recently when Respondent, Brandi Miller, deliberately harmed the children by informing them that Petitioner was not the children's biological father.

    7.2 Petitioner was the primary caretaker for each of the children much of the children's lives, including helping the children with homework, preparing meals for the children, and acting in a parental role to the children.

    7.3 Petitioner has provided and can provide a more stable, loving[,] and appropriate home, free from violence, than has Respondent, Brandi Miller.

    7.4 Respondent, Brandi Miller, has attempted to influence the children and their communications with officials from the Department of Child Services and this Court's Guardian Ad Litem.

    7.5 Respondent, Brandi Miller, uses the children as pawns to effectuate her own purposes and has limited the children's contact with Petitioner for selfish purposes.

7.6 Petitioner Brock Hawthorne's residence has sufficient space and is an appropriate environment for the care of the minor children.

7.7 Respondent, Brandi Miller, has, at various times, utilized Petitioner Brock Hawthorne's surname for and on behalf of the children and when referring to the children.

8. That the due process clause of the 14th Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody[,] and control of their children[,] *Troxel v. Granville*, 530 US 57 (2000), and most recently, Respondent, Brandi Miller, has permitted Petitioner, Brock Hawthorne, visitation with the minor children.

9. That Respondent, Brandi Miller, while certainly not a model parent, cannot be determined to be unfit, has not long acquiesced in Petitioner Brock Hawthorne's custody of the children, and has not voluntarily relinquished custody of the children to Petitioner, Brock Hawthorne. *See Hendrickson v. Binkley*, 316 N.E.2d 376 (1974).

10. That while Petitioner, Brock Hawthorne, has certainly acted in a positive fashion in the children's best interests and has been more of a parent to these children than either of the children's biological parents, the Court cannot find Petitioner, Brock Hawthorne, to be a de facto custodian as set forth in I.C. 31-9-2-35.5 and as is [sic] interpreted by *Brown v. Lungsford*, 63 N.E.3d 1057 (Ind. [Ct.] App. 2016).

WHEREFORE, BE IT ORDERED, ADJUDGED AND DECREED that Petitioner's Petition and Verified Motion for De Facto Custody or in the [A]lternative for Step-Parent Parenting Time is DENIED, subject to this Court reconsidering the same

should Respondent, Brandi Miller[,] deny visitation to Petitioner moving forward.

Appellant's App. at 11-13.

[7] On July 27, Stepfather filed a Motion to Correct Error and Motion to Reconsider, and the trial court set the motions for a hearing. At the August 30 hearing, the GAL once again testified. He had spoken with the twins earlier that same day and the twins had informed him that they wanted to live with Mother and did not wish to even visit Stepfather "because he's mean and he hurts them and all that stuff." Tr. at 208. However, the GAL testified that it would "adversely affect [the children] in their life" [sic] if they were "cut off" from Stepfather. *Id.* at 201. The GAL stated that, in his "personal view," Mother would be "unfit" if she did not give Stepfather parenting time with the twins. *Id.* at 213. The GAL believed Mother and Stepfather were speaking badly about each other in front of the children and that behavior was influencing the children's statements regarding their wishes for custody and visitation.

[8] In an order dated September 12, 2017, the trial court granted, in part, Stepfather's motion to correct error, stating in relevant part:

1. That Petitioner's Motion to Correct Errors should be granted to the extent that paragraph nine (9) of the Order entered herein on July 18, 2017, is modified and henceforth shall read as follows:

9. That Respondent, Brandi Miller, has not acted as a fit parent in denying Brock Hawthorne access to and visitation with the minor children, but has not long acquiesced in Petitioner Brock Hawthorne's custody of the children and has not voluntarily relinquished custody of the children to Petitioner, Brock Hawthorne. *See Hendrickson v. Binkley*, 316 N.E.2d 276 ([Ind.] 1974).

2. That paragraph ten (10) of this Court's Order of July 18, 2017, shall henceforth read as follows:

   10. That while Petitioner, Brock Hawthorne, has certainly acted in a positive fashion in the children's best interests and has been more of a parent to these children than either of the children's biological parents, the Court cannot find Petitioner, Brock Hawthorne[,] to be a de facto custodian for custodial purposes as set forth in I.C. 31-9-2-35.5, and as is [sic] interpreted by *Brown v. Lungsford*, 63 N.E.3d 1057 (Ind. [Ct.] App. 2016); however, Brock Hawthorne is a de facto custodian as set forth in I.C. 31-9-2-35.5 for purposes of visitation.

3. That following entry of this Court's Order of July 18, 2017, Respondent, Brandi Miller, without good cause, and in dereliction of the best interests of the minor children, prevented Brock Hawthorne from having visitation with said children, and said children with [sic] having visitation with Brock Hawthorne.

4. That it is in the best interests of the minor children that they have visitation with Brock Hawthorne, and that, henceforth, Brock Hawthorne shall have visitation as if he were the biological father of each of these children, with such visitation to be had in accordance with the Indiana Parenting Time Guidelines as presently construed, with the parties to share

the children and have the children in their respective custody together as much as is reasonably possible.

* * *

Appellant's App. at 9-10. Mother now appeals.

# Discussion and Decision

## Standard of Review

When the trial court sua sponte enters findings and conclusions pursuant to Indiana Trial Rule 52, as it did here,

> the findings "control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Tracy v. Morell*, 948 N.E.2d 855, 862 (Ind. Ct. App. 2011). We review findings for clear error and we review conclusions of law de novo. *Bowyer v. Ind. Dep't of Natural Res.*, 944 N.E.2d 972, 983 (Ind. Ct. App. 2011). A judgment is clearly erroneous if no evidence supports the findings, the findings do not support the judgment, or the trial court applies an incorrect legal standard. *Id*. at 983–84.

*K.S. v. B.W.*, 954 N.E.2d 1050, 1051 (Ind. Ct. App. 2011), *trans. denied*. However, we may affirm a trial court's judgment on any legal theory supported by the evidence. *See, e.g.*, *J.M. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283, 1289 (Ind. 2012) (quoting *Dowdell v. State*, 720 N.E.2d 1146, 1152 (Ind. 1999)).

[10] In addition, the visitation decision Mother challenges was made on a motion to correct error.

> The trial court's decision on a motion to correct error comes to an appellate court cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Instead, we look at the record to determine if: "(a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's [order] … has been made by the appellant." *Id.* (citation omitted) (omission in original).

*Page v. Page*, 849 N.E.2d 769, 771 (Ind. Ct. App. 2006).

## De Facto Custodian Statute

[11] Mother contends that the trial court erred as a matter of law when it granted Stepfather visitation[6] with the twins pursuant to Indiana's "de facto custodian" statute. We agree.

[12] Indiana law defines a "de facto custodian" as a person

---

[6] Although the trial court referred to the parenting time guidelines, only parents may be awarded "parenting time" pursuant to the Indiana Parenting Time Guidelines. *See K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 461 (Ind. 2009). "[V]isitation, on the other hand, may be awarded to an unrelated third party, such as a stepparent, under certain circumstances…" *Richardson v. Richardson*, 34 N.E.3d 696, 700 n.2 (Ind. Ct. App. 2015). Since Step-father is not a parent, we will refer to the trial court's order as a visitation order and not a parenting time order. *Id.*

who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least:

(1) six (6) months if the child is less than three (3) years of age; or

(2) one (1) year if the child is at least three (3) years of age.

I.C. § 31-9-2-35.5. Our Supreme Court has clearly held that status as a de facto custodian "bears only on the question of custody," and does not give a trial court authority to award visitation to a non-parent. *K.I.*, 903 N.E.2d at 461-62.

[13] Here, the trial court found that Stepfather was *not* a de facto custodian of the twins "for custodial purposes." Appellant's App. at 9. That finding is supported by the evidence that, while Stepfather did provide "substantial" care and support for the twins, he was not the "primary" caregiver and provider of financial support for them. *Id.* at 11.

[14] However, the trial court also held that Stepfather *was* a de facto custodian "for purposes of visitation." *Id.* at 9. That was an erroneous legal conclusion, as the de facto custodian statute only applies to custody, not visitation. *K.I.*, 903 N.E.2d at 461-62; *see also K.S. v. B.W.*, 954 N.E.2d 1050, 1051-52 (Ind. Ct. App. 2011) (emphasis added) ("Our legislature specifically provided the definition of de facto custodian *applies only to custody proceedings* following the determination of paternity (Ind. Code § 31-14-13-2.5), actions for child custody or modification of child custody orders (Ind. Code § 31-17-2-8.5), and temporary

placement of a child in need of services who is taken into custody (Ind. Code § 31-34-4-2).”), *trans. denied*.

## Step-Parent Visitation

[15]    However, we may affirm the trial court's judgment on any theory supported by the evidence. *J.M.*, 975 N.E.2d at 1289. Here, the evidence supports the judgment that Stepfather is entitled to third-party visitation rights with the twins.

[16]    Parents have a fundamental constitutional right to determine the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (citing the Due Process Clause of the Fourteenth Amendment to the United States Constitution). Thus, the courts must presume that a fit parent acts in her child's best interests, and they must give special weight to a fit parent's decision to deny or limit visitation to third parties. *Brown v. Lunsford*, 63 N.E.3d 1057, 1064 (Ind. Ct. App. 2016). However, that does not mean that the parent may impose an absolute veto on any non-parent visitation. *See, e.g.*, *Francis v. Francis*, 654 N.E.2d 4, 7 (Ind. Ct. App. 1995) (holding that "[a] parent's mere protest that visitation with the third party would somehow harm the family is not enough to deny visitation in all cases, particularly where the third party cared for the children as his own"), *trans. denied*. Rather, non-parents[7] may obtain visitation

---

[7] Grandparents visitation rights—which are not at issue here—must be established pursuant to the separate statutory scheme in the Grandparent Visitation statutes. I.C. § 31-17-5-0.2 through § 31-17-5-10. *Worrell v. Elkhart Cnty. Office of Family & Children*, 704 N.E.2d 1027, 1028 n.1 (Ind. 1998).

rights if they establish the existence of a custodial and parental relationship and that visitation is in the children's best interests. *Richardson v. Richardson*, 34 N.E.3d 696, 701 (Ind. Ct. App. 2015) (citing *Worrell*, 704 N.E.2d at 1028). "A stepparent relationship is a strong indicator that a custodial and parental relationship exists," and "a child's interest in maintaining relationships with those who have acted in a parental capacity will sometimes trump a natural parent's right to direct the child's upbringing." *Id.*

[17] Here, the evidence supports the trial court's finding that Stepfather had a custodial and parental relationship with the twins. He lived with, raised, and cared for the twins for about eight and a half years. The twins called him "dad" and he was the only father they ever knew. He also provided some financial support for the twins. This is sufficient evidence of a custodial and parental relationship. *See, e.g.*, *Nunn v. Nunn*, 791 N.E.2d 779, 786 (Ind. Ct. App. 2003) (finding a custodial and parental relationship between the child and stepfather where the stepfather and the child's mother both were involved in raising the child during the four-year period of their marriage, and stepfather cared for the child while mother was at work); *cf. Brown*, 63 N.E.3d at 1064-65 (holding mother's boyfriend, who was not a stepparent and had shown no custodial and parental relationship to mother's child, did not have standing to seek third-party visitation rights with the child).

[18] The evidence also supports the trial court's finding that visitation with Stepfather is in the twins' best interest. The twins were not only close with Stepfather but also with their half-brother, D.H., and the twins became upset

when D.H. was permitted to visit Stepfather but they were not. The GAL testified that it would be harmful to the twins if they were not permitted to visit with Stepfather. *See Richardson*, 34 N.E.3d at 702-03 (holding visitation was in the child's best interests where the stepfather had provided financial, emotional, physical, and educational support to the child for almost eight years); *Francis*, 654 N.E.2d at 7 (holding that, where the children lived with the stepfather for six-plus years and he was the only father they knew, continued significant contact between the stepfather and the children was in the children's best interests). And, although the GAL testified at the last hearing that the children did not wish to visit Stepfather, reportedly because he was "mean" and "hurt them," the DCS did not substantiate those allegations and the GAL gave those allegations little credit. Clearly, the trial court also chose to give little weight to those claims, and we may not reweigh that evidence. *Page*, 849 N.E.2d at 771.

# Conclusion

[19] Although the trial court erred as a matter of law when it granted Stepfather visitation with the twins pursuant to the de facto custodian statute, we affirm the judgment on the grounds that Stepfather had a custodial and parental relationship with the twins and visitation is in the twins' best interests.

[20] Affirmed.

Crone, J., and Brown, J., concur.